998 P.2d 479

STATE of Hawai'i, Plaintiff–Appellee,

v.

Justin VALENTINE, Defendant–Appellant.

No. 22566.

Supreme Court of Hawai'i.

May 2, 2000.

As Amended May 23 and July 3, 2000.

Linda C.R. Jameson (Deputy Public Defender), on the briefs, for the defendant-appellant Justin Valentine.

Richard K. Minatoya (Deputy Prosecuting Attorney), on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Intermediate Court of Appeals Judge ACOBA, Assigned by Reason of Vacancy.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Justin Valentine appeals from the second circuit court's judgment of conviction and sentence, filed on April 26, 1999, amended on April 29, 1999, and again amended on May 3, 1999, with respect to the offense of attempted prohibited possession of a firearm, pursuant to Hawai'i Revised Statutes (HRS) §§ 705-500 [1] and 134-7(b).[2] On appeal, Valentine contends that: (1) the circuit court erroneously instructed the jury that a reckless state of mind can sustain penal liability for the originally charged offense of prohibited possession of a firearm; (2) the circuit court erroneously instructed the jury regarding the included offense of attempted prohibited possession of a firearm; and (3) the circuit court erroneously gave a jury instruction on con-

structive and joint possession. We agree, but not for the reasons asserted by Valentine, that the jury instruction regarding the offense of attempted prohibited possession of a firearm was erroneous and that the error was not harmless beyond a reasonable doubt.

Consequently, with regard to the offense of attempted prohibited possession of a firearm, and for the reasons discussed *infra* in section III.A, we vacate, in part, the circuit court's judgment of conviction and sentence, as amended, and remand the present matter to the circuit court for further proceedings consistent with this opinion. In order to provide guidance on remand, *cf. State v. Davia*, 87 Hawai'i 249, 252, 953 P.2d 1347, 1350 (1998), inasmuch as the jury may need to be instructed with respect to the substantive offense that Valentine allegedly attempted to commit, we will address the fact that the circuit court's instruction regarding the charged offense of prohibited possession of a firearm was incomplete, *see infra* section III.D. Furthermore, inasmuch as Valentine was necessarily acquitted, pursuant to HRS § 701-110(1),[3] of the charged offense of pro-

---

1. HRS § 705-500 (1993) provides:

 **Criminal Attempt.** (1) A person is guilty of an attempt to commit a crime if the person:

 (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

 (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

 (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

 (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

2. HRS § 134-7(b) (1993) provides in relevant part that "[n]o person who ... has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or

control any firearm or any ammunition therefor."

3. HRS § 701-110 (1993) provides in relevant part:

 When a prosecution is for an offense under the same statutory provision and is based on the same facts as a former prosecution, it is barred by the former prosecution under any of the following circumstances:

 (1) The former prosecution resulted in an acquittal which has not subsequently been set aside. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact.... A finding of guilty of a lesser inclusive offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside on appeal by the defendant.

 The commentary to § 701-110 explains the rationale that animates subsection (1) in relevant part as follows:

 Subsection (1) states an important rule as to which there is some variance of opinion among the states. If the accused is found guilty of a lesser included offense, that is an automatic acquittal of the greater inclusive offense, and the accused may not later be tried or convicted for that greater offense, despite reversal of the accused's conviction for the lesser offense. This seems to follow from the

hibited possession of a firearm by virtue of the jury's guilty verdict as to the included offense of attempted prohibited possession of a firearm, he may not be reprosecuted for the charged offense of prohibited possession of a firearm. In light of the foregoing, Valentine's third point of error is moot, *see infra* section III.E.

## I. *BACKGROUND*

### A. *Factual Synopsis*

Given the limited scope of the present appeal, the facts can be stated briefly. Valentine was charged in a two-count indictment with (1) terroristic threatening in the first degree (Count I) and (2) prohibited possession of a firearm (Count II), *see supra* note 2. At trial, Maui police officer Leffler testified as follows.

At approximately 2:00 a.m. on March 22, 1997, while restrained in a headlock hold by Officer Leffler, Valentine reached around Officer Leffler's back. Officer Leffler was attempting to place Valentine under arrest for disorderly conduct. Officer Leffler testified that, as he was struggling with Valentine, he felt a "tugging" on his firearm and gun belt and, looking down, observed Valentine's hand on the handle of the firearm. A safety strap—which, when snapped over the firearm, prevented the firearm from being discharged while holstered—secured the firearm in the holster. Officer Leffler placed his hand on top of Valentine's hand, thereby preventing Valentine from unsnapping the safety strap and withdrawing the firearm from the holster. Within "split-seconds," another police officer sprayed the unruly crowd, which had initially gathered to watch Valentine fight another unidentified male, with pepper spray. Affected by the pepper spray, Officer Leffler released Valentine from the headlock. Valentine retreated from Officer Leffler as another person approached the officer and struck him three times. Val-

entine was subsequently arrested by other police officers.

After a jury trial, Valentine was convicted of Count I and of an included offense of Count II, to wit, attempted prohibited possession of a firearm. Valentine does not challenge his conviction of Count I in the present appeal.

### B. *The Relevant Jury Instructions*

1. *The circuit court's jury instruction regarding the offense of prohibited possession of a firearm*

The circuit court instructed the jury regarding the offense of prohibited possession of a firearm as follows:

> ... In Count Two of the indictment, the defendant, Justin Valentine, is charged with the offense of Prohibited Possession of a Firearm.
>
> A person commits the offense of Prohibited Possession of a Firearm if having been previously convicted of committing a felony he intentionally, knowingly or recklessly owns, possesses or controls any firearm.
>
> There are three material elements of the offense of prohibited possession of a firearm, each of which the prosecution must prove beyond a reasonable doubt. These three elements are one, that on March 22, 1997, Defendant, Justin Valentine, was convicted of committing a felony, and two, that on or about March 22, 1997, in the County of Maui, State of Hawaii, the Defendant owned, possessed or controlled a firearm, and three, that the Defendant did so intentionally, knowingly or recklessly.

Valentine objected to this instruction on the ground that it should not have included a reckless state of mind.

2. *The circuit court's jury instructions regarding possession*

The circuit court instructed the jury that:

> ... The law recognizes two kinds of possession, actual possession and constructive

fact that the jury has been unable to agree, for whatever reason, on the defendant's guilt of the more serious offense. At that point, the defendant should be free from the threat of a renewed prosecution for that offense. If the defendant faces reprosecution for an offense of

which the defendant has been acquitted, the defendant may be unfairly hampered in the defendant's decision about whether to contest the validity of the conviction for the lesser offense....
(Footnote omitted.)

possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it.

A person who although not in actual possession knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons is then in constructive possession of it.

The law recognizes also that the possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

The element of possession has been proved if you find beyond a reasonable doubt that the Defendant had actual or constructive possession, either solely or jointly with others.

Mere proximity to the object, mere presence or mere association with the person who does control the object is insufficient to support a finding of possession.

Valentine objected to the giving of this instruction on the ground that it was inapplicable to the facts adduced at trial.

The only other instruction the jury received regarding "possession" was that "[t]he word possession means conscious and substantial possession, not a mere involuntary or superficial possession or a passing control fleeting and shadowy in nature."

3. *The circuit court's jury instruction regarding the included offense of attempted prohibited possession of a firearm*

The prosecution requested that the jury be instructed on the offense of attempted prohibited possession of a firearm as an included offense of the offense charged in Count II, pursuant to HRS § 134–7(b). The circuit court, modifying the prosecution's proposed jury instruction, instructed the jury as follows over Valentine's objection:

... If and only if you find the Defendant not guilty of Prohibited Possession of a Firearm, or you are unable to reach a unanimous verdict as to this offense, then you must determine whether the Defendant is guilty or not guilty of the included offense of Attempted Prohibited Possession of a Firearm.

A person commits the offense of Attempted Prohibited Possession of a Firearm if having been previously convicted of committing a felony he attempts to intentionally or knowingly own, possess or control any firearm by intentionally engaging in conduct which under the circumstances as he believed them to be constituted a substantial step in a course of conduct intended to culminate in the commission of the crime of Prohibited Possession of a Firearm.

There are three material elements of this offense, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are, one, that prior to March 22, 1997, the Defendant, Justin Valentine, was convicted of committing a felony, and two, that on or about March 22, 1997, in County of Maui, State of Hawaii the Defendant did attempt to intentionally or knowingly own, possess or control a firearm, and three, that Defendant did so by intentionally engaging in conduct which under the circumstances as he believed them to be constituted a substantial step in a course of conduct intended to culminate in the commission of the crime of Prohibited Possession of a Firearm.

Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit Prohibited Possession of a Firearm.

Valentine's objection at trial was that the instruction permitted a non-unanimous verdict, inasmuch as the instruction did not "specify the conduct or the facts which the jury must find in order to convict," and that the evidence adduced at trial potentially established three distinct acts—(1) grabbing onto Officer Leffler's belt, (2) touching the firearm, or (3) holding onto the firearm's handle—each of which could constitute the "substantial step" in an attempt to possess the firearm.

## II. STANDARDS OF REVIEW

### A. Jury Instructions

 " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)).... *See also State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ... (quoting *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

> [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt,* 500 U.S. 391, 402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] ... (1991)[.]

*[State v.] Arceo,* 84 Hawai'i [1,] 11–12, 928 P.2d [843,] 853–54 [ (1996) ] (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Cabrera,* 90 Hawai'i 359, 364–65, 978 P.2d 797, 802–03 (1999) (quoting *State v. Maumalanga,* 90 Hawai'i 58, 62–63, 976 P.2d 372, 376–77 (1998) (quoting *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997)) (ellipsis points in original) (some brackets added and some in original)).

### B. Statutory Interpretation

 "[T]he interpretation of a statute ... is a question of law reviewable de novo." ... *Arceo,* 84 Hawai'i [at] 10, 928 P.2d [at] 852 ... (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, ... (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, ... (1994)....

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting ... *Toyomura,* 80 Hawai'i [at] 18–19, 904 P.2d [at] 903–04 ... ) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993). *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999)[ ] (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998))))) (some ellipsis points and brackets added and some in original).

### C. *Plain Error*

 "We may recognize plain error when the error committed affects substantial rights of the defendant." *Arceo,* 84 Hawai'i at 33, 928 P.2d at 875. Moreover, "it may be plain error for a trial court to fail to give an ... instruction even when neither the prosecution nor the defendant have requested it ... because ... 'the ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel.'" *Arceo,* 84 Hawai'i at 33, 928 P.2d at 875 (quoting *State v. Kinnane,* 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995) (quoting *State v. Kupau,* 76 Hawai'i 387, 395, 879 P.2d 492, 500 (quoting *Briones v. State,* 74 Haw. 442, 473, 848 P.2d 966, 980 (1993) (Levinson, J., concurring)))) (internal quotation signals added) (ellipses in original).

### III. *DISCUSSION*

### A. *The Circuit Court's Jury Instruction Regarding The Included Offense Of Attempted Prohibited Possession Of A Firearm Was Erroneous.*

 Valentine contends that the circuit court's jury instruction regarding the included offense of attempted prohibited possession of a firearm was erroneous because it permitted the jury to convict without requiring that all the jurors agree as to the particular intentional act that constituted a substantial step in the commission of the offense of prohibited possession of a firearm. We disagree. Before addressing Valentine's argument, however, we note that the instruction's definition of the offense and its material elements failed correctly to reconcile the statutory elements of criminal attempt liability, *see supra* note 1, with the elements of the offense of prohibited possession of a firearm, *see supra* note 2.

### 1. *The offense of attempted prohibited possession of a firearm*

We observed in *State v. Holbron,* 80 Hawai'i 27, 904 P.2d 912 (1995), that:

"HRS § 701–114(1)(a) and (b) [ (1993) ] requires proof beyond a reasonable doubt of each element of the offense, as well as 'the state of mind required to establish each element of the offense.'" *State v. Pinero,* 75 Haw. 282, 300, 859 P.2d 1369, 1378 (1993) [hereinafter *Pinero II* ].... Moreover, HRS § 702–204 [ (1993) ] provides in relevant part that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies with respect to each element of the offense." Finally, HRS § 702–207 [ (1993) ] provides that "[when] the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears.

[*State v. Chung,* 75 Haw. 398, 411, 862 P.2d 1063, 1070 (1993).] ... In addition, "[pursuant] to HRS § 702–205 [ (1993) ], the requisite state of mind applies to such conduct, attendant circumstances, and results of conduct as are specified by the definition of the offense." *Chung,* 75 Haw. at 411–12[ & ] n. 8, 862 P.2d at 1071[ & ] n. 8.

*Holbron,* 80 Hawai'i at 39, 904 P.2d at 924 (some citations omitted) (some brackets added and some in original) (emphasis omitted). Pursuant to HRS § 702–204, "[w]hen the state of mind required to establish an element of the an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."

■ HRS § 134–7(b), *see supra* note 2, does not "specify" a state of mind; thus, pursuant to HRS § 702–204, the requisite state of mind necessary to convict a person of the offense proscribed by HRS § 134–7(b) is established if the accused owns, possesses, or controls a firearm intentionally, knowingly, or recklessly. *See State v. Pinero,* 70 Haw. 509, 526, 778 P.2d 704, 715 (1989) (*Pinero I* ); *State v. Jenkins,* 93 Hawai'i 87, 109–112, 997 P.2d 13, 35–38 (2000).

On the other hand, the requisite state of mind necessary to convict a person of the offense of *attempted* prohibited possession of a firearm *is* statutorily "specified." HRS § 705–500(1)(b) provides in relevant part that "[a] person is guilty of an attempt to commit a crime if the person[ ] ... *[i]ntentionally* engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct *intended* to culminate in the person's commission of the crime." We noted in *Holbron,* that

> the commentary on HRS § 705–500 sets forth the conceptual underpinnings of the "nature of intent in attempt cases" in relevant part as follows:[ ]
>
> **The nature of intent in attempt cases.** Subsection (1) recognizes penal liability where the defendant's conduct is intentional and consummation of the crime is prevented ... by some intervening factor following a substantial step in a course of conduct planned to culminate in the commission of the crime. It is easy to recognize penal liability in such cases, notwithstanding the absence of a substantive offense, because *the defendant's intent*—his conscious object— *is commission of the crime.*[ ] His disposition toward criminal activity thus established, attempt liability is imposed,

... under subsection (1)(b), if his conduct has advanced so far toward the criminal objective as to constitute a substantial step in a course of conduct *intended* to reach the objective.[ ]

> ....
>
> ... Viewing the plain language of HRS § 705–500 commonsensically and in the light of its commentary, we distill the following propositions: (1) being unconditional in its prefatory language, HRS § 705–500(1) addresses the universe of criminal attempts; ... (3) HRS § 705–500(1)(b), in substance, imposes criminal attempt liability on a defendant who, by virtue of his or her *intentional conduct, has purposely and substantially undertaken to commit a criminal offense, but, because of factors not of his or her choosing, has failed to consummate it* ....

*Holbron,* 80 Hawai'i at 40–41, 904 P.2d at 925–26 (some emphasis added and some in original) (footnotes omitted). As applied in the context of the present matter, the requisite state of mind necessary to convict Valentine of the offense of prohibited possession of a firearm, pursuant to HRS §§ 134–7(b) and 702–204, would have been satisfied if the prosecution had proved beyond a reasonable doubt that he intentionally, knowingly, or recklessly possessed a firearm, *see infra* section III.D. However, the requisite state of mind necessary to convict a person of the offense of attempted prohibited possession of a firearm, pursuant to HRS §§ 705–500, 134–7(b), and 702–204, is only established if the accused has *intentionally* engaged in conduct that constitutes a substantial step in a course of conduct *intended* to culminate in the commission of the offense of prohibited possession of a firearm. *Cf. Holbron,* 80 Hawai'i at 40–41, 904 P.2d at 925–26.

■ Moreover, pursuant to HRS § 705–500(3), conduct, such as reaching for a holstered firearm, "shall not be considered a substantial step ... unless it is strongly corroborative of the defendant's criminal intent," *see supra* note 1. In other words, if ambiguity or uncertainty clouds the inference, sought to be derived from a particular act, that the defendant *intended* to possess or control the firearm, then the act cannot

legally satisfy the substantial step requirement of criminal attempt.

█ As a general matter, we further observe that HRS § 705–500(2), *see supra* note 1, does *not* apply to the offense of attempted prohibited possession of a firearm. Indeed, HRS § 705–500(2) applies only if "causing a particular result is an element of the crime" attempted. *See Holbron,* 80 Hawai'i at 41, 904 P.2d at 926 ("HRS § 705–500(2) superimposes a gloss on the general attempt liability described in HRS § 705–500(1) in instances 'when causing a particular result is an element of the crime' …"). Pursuant to HRS § 702–205 (1993), "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct[ ] as … [a]re specified by the [statutory] definition of the offense." For purposes of HRS § 702–205, the offense defined by HRS § 134–7(b), as it pertains to the present matter, is comprised of the following components: (1) that a person convicted of a felony (attendant circumstance) (2) possesses or controls an object (conduct) (3) exhibiting the attributes of a firearm (attendant circumstance) (4) and that the person does so intentionally, knowingly, or recklessly. Insofar as HRS § 134–7(b) does not contain a "result-of-conduct" element, HRS § 705–500(2) is inapplicable to the present matter and, therefore, does not superimpose a gloss on the general principles of attempt liability set forth in HRS §§ 705–500(1) and (3).

█ Accordingly, a person commits the offense of attempted prohibited possession of a firearm, pursuant to HRS §§ 705–500(1)(b), 705–500(3), and 134–7(b), if he or she intentionally engages in conduct that, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the offense of prohibited possession of a firearm. There are two material elements of the offense of attempted prohibited possession of a firearm, each of which the prosecution must prove beyond a reasonable doubt. These two elements are: (1) that the defendant engaged in conduct that, under the circumstances as he or she believed them to be, constituted a substantial step in a course of conduct intended by him

or her to culminate in the commission of the offense of prohibited possession of a firearm; and (2) that the defendant engaged in such conduct intentionally. Moreover, conduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's intent to commit the offense of prohibited possession of a firearm.

With the foregoing analysis in mind, we turn to the jury instruction given by the circuit court regarding the offense of attempted prohibited possession of a firearm.

2. *The circuit court's jury instruction regarding attempted prohibited possession of a firearm*

The circuit court's jury instruction regarding the offense of attempted prohibited possession of a firearm did not conform with our analysis *supra* in section III.A.1. Rather, the instruction purported to advise the jury, pursuant to HRS § 705–500(2), *see supra* note 2, that "knowingly" was a sufficient state of mind to establish criminal attempt liability in the present matter. In relevant part, the jury was instructed that:

A person commits the offense of Attempted Prohibited Possession of a Firearm if having been previously convicted of committing a felony he attempts to intentionally *or knowingly* own, possess or control any firearm by intentionally engaging in conduct which under the circumstances as he believed them to be constituted a substantial step in a course of conduct intended to culminate in the commission of the crime of Prohibited Possession of a Firearm.

(Emphasis added.) The circuit court further instructed the jury that an "element" of the offense was that Valentine "did attempt to intentionally *or knowingly* own, possess or control a firearm," (emphasis added).

The only possible source of the circuit court's instruction that "knowingly" would satisfy the state of mind required to establish an attempt to commit the offense charged pursuant to HRS § 134–7(b) was HRS § 705–500(2), which provides in relevant part that, *"[w]hen causing a particular result is an element of the offense,* a person is guilty

of an attempt to commit the crime if . . . the person intentionally engages in conduct which is a substantial step in a course of conduct intended *or known* to cause such a result" (emphases added), *see supra* note 1. Inasmuch as the offense of attempted prohibited possession of a firearm does not include a result-of-conduct element and HRS § 705–500(2) does not, therefore, apply, *see supra* section III.A.1, we hold that the instruction erroneously defined the state of mind necessary to prove the offense of attempted prohibited possession of a firearm as something less than intentional, as required by HRS § 705–500(1)(b).

▬ Because we cannot say beyond a reasonable doubt that Valentine was not convicted of the offense of attempted prohibited possession of a firearm predicated upon a "knowing" state of mind, the error cannot be harmless. Thus, inasmuch as there is a reasonable possibility that the erroneous instruction may have contributed to Valentine's conviction—and, *a fortiori*, have affected his substantial rights—we vacate the circuit court's judgment of conviction and remand for a new trial on the offense of attempted prohibited possession of a firearm, pursuant to HRS §§ 705–500(1)(b), 705–500(3), and 134–7(b).

B. *The Circuit Court Did Not Err In Failing To Give A Specific Unanimity Instruction.*

▬ The circuit court did not read the jury a specific unanimity instruction. Valentine complains that, absent such an instruction, the jury could have predicated conviction upon inconsistent factual findings. We disagree that the failure to give a specific unanimity instruction was erroneous in the present matter.

"[T]he right of an accused to a unanimous verdict in a court of this state[ ] is guaranteed by article I, sections 5 and 14 of the Hawai'i Constitution." *Arceo*, 84 Hawai'i at 30, 928 P.2d at 872. In *Arceo*, we held that "when separate and distinct *culpable acts are subsumed within a single count* charging sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the

charged offense, the defendant's constitutional right to a unanimous verdict is violated" unless either the prosecution elects the specific conduct upon which it intends to rely to establish the conduct element of the offense or the trial court gives the jury a specific unanimity instruction. *Id.* at 32–33, 928 P.2d at 874–75 (emphasis added). The *Arceo* decision dealt with a situation in which the prosecution had adduced evidence regarding independent incidents, during each of which the defendant engaged in conduct that could constitute the offense charged, and each of which could have been, but were not, charged as separate offenses. *Id.* at 21–22, 928 P.2d at 863–64. Inasmuch as these independent instances of culpable conduct were submitted to the jury in a single count that charged but one offense, we held that a specific unanimity instruction was necessary to ensure that each juror convicted the defendant on the basis of the same incident of culpable conduct. *Id.* at 32–33, 928 P.2d at 874–75.

▬ Thus, two conditions must converge before an *Arceo* unanimity instruction, absent an election by the prosecution, is necessary: (1) at trial, the prosecution adduces proof of two or more separate and distinct culpable acts; and (2) the prosecution seeks to submit to the jury that only one offense was committed. Moreover, it bears repeating that the purpose of an *Arceo* unanimity instruction is to eliminate any ambiguity that might infect the jury's deliberations respecting the particular conduct in which the defendant is accused of engaging and that allegedly constitutes the charged offense.

In the present matter, there was no danger that the jury would be confused regarding the conduct of which Valentine was accused and that constituted the charged offense. The prosecution offered only one theory of the proof adduced at trial: Valentine grabbed for the officer's firearm as the two struggled with each other. Moreover, the evidence adduced at trial did not establish more than one incident during which Valentine engaged in conduct constituting an attempt to possess the officer's firearm. To the contrary, the evidence concerned only a single episode between Valentine and Officer Leffler, during which the two

allegedly engaged in a continuous struggle for possession and control of the firearm. Consequently, our decision in *Arceo* is not implicated by the present matter, which concerns but a single incident of culpable conduct, and, therefore, the circuit court was not required to read the jury a specific unanimity instruction.

C. *The Circuit Court Did Not Err By Instructing The Jury That Attempted Prohibited Possession Of A Firearm Was An Included Offense Of Prohibited Possession Of A Firearm.*

██ Valentine argues that, inasmuch as a greater degree of mental culpability is required to establish the offense of attempted prohibited possession of a firearm than is necessary to establish the charged offense of prohibited possession of a firearm, the former cannot be an included offense of the latter, and, therefore, the circuit court erroneously instructed jury regarding the uncharged offense of attempted prohibited possession of a firearm.

In *State v. Alston*, 75 Haw. 517, 865 P.2d 157 (1994), this court . . . summarized the law in Hawai'i applicable to the issue of what constitutes an included offense. We began our analysis by citing *[State v. ]Burdett*, 70 Haw. [85,] 87, 762 P.2d [164,] 165 [ (1988) ], for the general proposition that "an offense is [an] . . . included offense of another if it satisfies the requirements set forth in HRS § 701–109(4) [ (1993) ][,] which codifies the common law doctrine of . . . included offenses." *Alston*, 75 Haw. at 532–33, 865 P.2d at 166 ( . . . internal quotation marks omitted).

*State v. Kinnane*, 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995).

HRS § 701–109(4)(b) (1993) provides in relevant part that "[a] defendant may be convicted of an offense included in an offense charged in the indictment or the information" and that "[a]n offense is so included when . . . [i]t consists of an attempt to commit the offense charged[.]" Valentine cannot contend that the offense of attempted prohibited possession of a firearm is not an attempt to commit the charged offense of prohibited possession of a firearm. Accordingly, there

is no merit to Valentine's argument. *Cf. Kinnane*, 79 Hawai'i at 51 & n. 10, 897 P.2d at 978 & n. 10.

D. *The Circuit Court's Jury Instruction Regarding The Offense Of Prohibited Possession Of A Firearm Was Erroneous.*

Valentine contends that the jury instruction regarding the charged offense of prohibited possession of a firearm was erroneous because it permitted conviction upon a finding that Valentine recklessly possessed the firearm. Valentine's argument is foreclosed by *Pinero I, supra; see also Jenkins*, at 109–112, 997 P.2d at 35–38.

In *Pinero I*, we held that the requisite state of mind "of the crime defined by HRS § 134–7(b) is established when a previously convicted felon possesses or controls a firearm 'intentionally, knowingly, *or recklessly.*' " 70 Haw. at 526, 778 P.2d at 715 (quoting HRS § 702–204) (emphasis added). Therefore, it is not erroneous, as a general matter, to instruct a jury, as the circuit court did in the present matter, that "[a] person commits the offense of Prohibited Possession of a Firearm if having been previously convicted of committing a felony he intentionally, knowingly or recklessly owns, possesses[,] or controls any firearm."

██ However, the circuit court's jury instruction was incomplete in the present matter by virtue of its failure to explicate the interplay between a reckless state of mind and possession of a firearm. In relevant part, the circuit court instructed that the elements of the offense of prohibited possession of a firearm were:

. . . one, that prior to March 22, 1997, . . . Valentine[ ] was convicted of committing a felony, and two, that on or about March 22, 1997, [he] owned, possessed or controlled a firearm, and three, that [he] did so intentionally, knowingly, or recklessly.

In addition, the circuit court's jury instruction regarding "possession" was silent as to the manner in which possession may be reckless. *See supra* section I.B.2.

We have recently held that:

for the purposes of HRS § 134–7(b), "possession" must be analyzed employing a two-pronged analysis: (1) the voluntary act of "possession" of an object *itself* is, by way of HRS § 702–202,[4] satisfied where an individual acts knowingly with respect to his or her conduct; and (2) the requisite state of mind with respect to the attendant circumstances—*i.e.*, the particular qualities of the object that make it illegal to possess it—is, by way of HRS § 702–204, satisfied by a reckless state of mind. Thus, as applied, to prove the "voluntary act" of possession, the prosecution must first adduce evidence that the defendant knowingly procured or received an object, or was aware of his or her control of that object for a sufficient period to have terminated possession. *See* HRS § 702–202. Second, to prove the requisite state of mind regarding the particular qualities of the object, the prosecution must, at the very least, adduce evidence that the defendant possessed the object in reckless disregard of the substantial and unjustifiable risk that it was a firearm. *See* HRS § 702–204. *Jenkins,* at 111, 997 P.2d at 37. (emphasis in original). To provide guidance on remand, inasmuch as the jury may need to be instructed regarding the offense Valentine allegedly attempted to commit, "the jury[, on remand,] ... should [be] instructed in accordance with this analysis." *Jenkins,* at 111, 997 P.2d at 37.

E. *Valentine's Challenge Of The Jury Instruction Regarding Constructive And Joint Possession Is Moot.*

Valentine argues that the jury instruction regarding constructive and joint possession should not have been given. Specifically, Valentine argues that "such an instruction [is] only applicable where more than one party could have access or ownership over an illegal item and therefore *all* parties would be culpable" (emphasis in original). Valentine claims that, inasmuch as Officer Leffler was the rightful owner of the firearm, "[i]t would be absurd to say that both Off[icer] Leffler and [Valentine] were therefore in 'joint constructive possession' where one of the parties is a police officer with his gun."

Inasmuch as Valentine was acquitted of the charged HRS § 134–7(b) offense and, moreover, the jury instruction regarding constructive and joint possession is not relevant with respect to the remanded offense of attempted prohibited possession of a firearm, for which possession of any kind need not be proved, the propriety of the instruction is moot.

## IV. CONCLUSION

Based on the foregoing analysis, we vacate that portion of the circuit court's judgment convicting and sentencing Valentine with regard to the offense of attempted prohibited possession of a firearm and remand this matter to the circuit court for further proceedings consistent with this opinion.

---

4. HRS § 702–202 (1993) provides that "[p]ossession is a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control of it for a sufficient period to have been able to terminate the defendant's possession."