116 P.3d 703

STATE of Hawai'i, Plaintiff–Appellee,

v.

Bardwell EBERLY, Defendant–Appellant.

No. 24750.

Intermediate Court of Appeals of Hawai'i.

March 15, 2005.

Certiorari Granted April 18, 2005.

James A. Delacy for defendant-appellant.

Daniel H. Shimizu, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.

BURNS, C.J., and FOLEY, J., and NAKAMURA, J., Dissenting.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Bardwell Eberly (Eberly) appeals from the Judgment filed on October 12, 2001, in the Circuit Court of the First Circuit (circuit court).[1] A jury found Eberly guilty of Counts I and II, Possession of a Firearm by a Person Convicted of Certain Crimes in violation of Hawaii Revised Statues (HRS) § 134–7(b) (Supp.2004),[2] and

---

**1.** The Honorable Michael A. Town presided.

**2.** Hawaii Revised Statutes (HRS) § 134–7(b) and (h) (Supp.2004) provides:

§ **134–7 Ownership or possession prohibited, when; penalty.**

. . . .

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

. . . .

Count III, Possession of Ammunition by a Person Convicted of Certain Crimes in violation of HRS § 134–7(b).

On appeal, Eberly contends (1) the circuit court provided an insufficient jury instruction on the defense of ignorance or mistake of fact, (2) Eberly received ineffective assistance of counsel, and (3) the circuit court violated Eberly's right to a fair trial by allowing the jurors to ask improper questions of witnesses.

## I.

Eberly was indicted on September 4, 1997 for Possession of a Firearm by a Person Convicted of Certain Crimes and Possession of Ammunition by a Person Convicted of Certain Crimes. The following evidence was adduced at the jury trial, which began on July 10, 2001.

On July 17, 1995, Eberly went to room 356 at the Outrigger West Hotel to pick up a fake identification card (ID) Eberly had purchased from Bert Koide (Koide). After Eberly arrived, Koide received a phone call and left the room. Eberly testified that Koide told him "not to let nobody in the room" because Koide did not want anyone "touching the girl's stuff, or his bag."

That same day, Police Officers Paul Ledesma (Ledesma) and Robert Stepien (Stepien) (collectively, the Officers) were dispatched to the Outrigger West Hotel to investigate the possible fraudulent use of a credit card. The Officers arrived at the hotel and met with Outrigger Security Officer Chris Waggoner (Waggoner). Waggoner informed the Officers that room 356 was registered to Koide and the room had been rented with a stolen credit card. Ledesma, Stepien, and Waggoner went to the room, and Waggoner knocked on the door.

Eberly answered the door, and the Officers asked if Koide was in. Eberly responded no. Waggoner told Eberly he was going to "trespass" Eberly because Eberly should not have been in the room without Koide since Koide was the only registered guest.

Waggoner entered the room, followed by the Officers, to make sure Koide was not in the room. Waggoner saw a blue bag near the bed and asked Eberly if the bag was his. Both Waggoner and Ledesma testified that Eberly did not respond. Waggoner informed Eberly that it was hotel policy to inventory all the property inside the room. Waggoner picked up the blue bag and started to open it. Eberly testified he told Waggoner twice that Waggoner could not open the bag and once that Waggoner needed a warrant. Eberly testified he told Waggoner the bag was not his. Eberly also testified that he had not touched, lifted up, opened up, or looked inside the blue bag and did not know what was in it, and "as far as [he] knew it was [Koide's] bag."

Eberly testified that Waggoner partially unzipped the bag, zipped it back up, handed the bag to Eberly, and Eberly "grabbed the bag." When Eberly grabbed the bag, Waggoner said "there's weapons in the bag." Eberly testified that he "froze with fear."

Waggoner and Ledesma testified that when Waggoner picked up the bag, Eberly grabbed it away from Waggoner and starting moving toward the far end of the room with the bag near his belt line. Ledesma testified that he thought a weapon could be in the bag, so he told Eberly to drop the bag. Eberly did not follow Ledesma's instructions and started walking away. Ledesma grabbed Eberly's left arm, and Stepien grabbed Eberly's right arm. The Officers struggled with Eberly, trying to get Eberly to drop the bag. Waggoner grabbed the bag out of Eberly's hand and threw it on the floor. The Officers finally took Eberly to the ground and put handcuffs on him.

Eberly testified that after the Officers grabbed him, one of them started hitting him in the ribs and the other one got him in a "choke hold." Ledesma testified that no one put Eberly into a choke hold. Waggoner testified that Ledesma and Stepien struck Eberly in the ribs twice trying to get Eberly

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty

of a class B felony. Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

to drop the bag, but he did not see either officer put Eberly in a choke hold.

The blue bag was partially open, and Ledesma saw a gun in the bag. When the Officers opened the bag, they discovered, among other things, two guns, a clip to hold bullets, a bullet and casing, a Florida driver's license with Eberly's picture on it but with a different name, and another ID card. Stepien searched Eberly and discovered bullets in Eberly's pants pocket. Waggoner testified that he saw bullets on the floor. Eberly denied that he had any bullets or that Stepien recovered any bullets from his pocket. Eberly testified that one of the police officers who showed up later dropped the bullets on the ground, and when Eberly first saw the bullets, they were on the ground. Eberly also saw several ID cards on the ground next to him. The Officers subsequently arrested Eberly.

During the trial, the circuit court allowed the jury to submit questions to witnesses solely to clarify facts of the case. Eberly made a general objection to all questions from the jury. The jury asked three questions. The circuit court allowed two of the three questions and allowed both sides to ask follow-up questions.

After the State rested its case, Eberly moved for a judgment of acquittal, which the circuit court denied after oral argument. At the end of the trial, Eberly renewed his motion for judgment of acquittal, which the court again denied. On July 16, 2001, the jury returned guilty verdicts on all charges. Eberly filed a motion on July 23, 2001 requesting a new trial and a motion on July 25, 2001 for judgment of acquittal.

On September 14, 2001, the State filed a Motion for Sentencing of Repeat Offender and a Motion for Extended Term of Imprisonment based on Eberly's prior criminal history and current multiple convictions. The circuit court sentenced Eberly on Counts I and II to an extended twenty-year term of imprisonment on each count, with a mandatory minimum term of imprisonment of three years and four months. The circuit court took no action on Count III. The Judgment was filed on October 12, 2001.

On November 23, 2001, the circuit court entered its Findings of Fact, Conclusions of Law, and Order Denying Motion for Judgment of Acquittal or for New Trial. On December 4, 2001, the circuit court filed an Order Granting Motion for Sentencing of Repeat Offender. The circuit court entered its Finding of Facts, Conclusions of Law, and Order Granting Motion for Extended Term of Imprisonment on December 7, 2001. Eberly timely appealed.

## II.

As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error. . . . [T]his Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights. *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citations omitted).

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. If the instructions requested by the parties are inaccurate or incomplete but are necessary in order for the jury to have a clear and correct understanding of what it is that they are to decide, then the trial court has the duty either to correct any defects or to fashion its own instructions.

Nevertheless, the trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. If that standard is met, however, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal. Whether a jury in-

struction accurately sets forth the relevant law is a question that this court reviews *de novo.*

Furthermore, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*State v. Vanstory,* 91 Hawai'i 33, 42–43, 979 P.2d 1059, 1068–69 (1999) (internal quotation marks, citations, and brackets omitted; block quote format changed).

### III.

Eberly contends the circuit court did not properly instruct the jurors that they were required to determine "expressly and separately" whether the State proved beyond a reasonable doubt that Eberly was not ignorant or mistaken. Eberly contends the circuit court was required to submit to the jury an instruction informing the jury of the State's burden of proof for the non-affirmative defense of ignorance or mistake of fact because Eberly's defense was that he did not know there were weapons inside the blue bag.

**3.** The first sentence of the requested instruction essentially tracked the language of the first paragraph of Hawai'i Pattern Jury Instructions—Criminal (HAWJIC) 7.13, deleting, however, the reference to mistake of fact. HAWJIC 7.13 (2001) read as follows:

7.13 IGNORANCE OR MISTAKE OF FACT
In any prosecution for an offense, it is a defense that the Defendant engaged in the prohibited conduct under ignorance or mistake of fact if the ignorance or mistake negates the state of mind required to establish an element of the offense.
[Thus, for example, a person is provided a defense to a charge based on an intentional or knowing state of mind, if the person is mistaken (either reasonably, negligently, or recklessly) as to a fact that negates the person's state of mind required to establish an element of the

The jury instruction presented to the jury, without objection by Eberly, was: "In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance if the ignorance negatives the state of mind required to establish an element of the offense."

Eberly had requested the following jury instruction:

In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance if the ignorance negatives the state of mind required to establish an element of the offense. Therefore, if you have any reasonable doubt that the defendant did not know there were handguns in the bag, you must find the Defendant not guilty of Counts I and II.[3]

(Footnote added.)

The State objected to the second sentence of the instruction, and the circuit court ruled that it would "give ... sentence one only, because the second one does I think comment on the evidence. [Counsel] can argue that. Somebody's ignorant, that negatives their [sic] state of mind."

Eberly asserts that paragraph four of Hawai'i Pattern Jury Instructions—Criminal (HAWJIC) 7.13 should have been included in the instructions to the jury and his substantial rights were harmed by its absence. Paragraph four of HAWJIC 7.13 provides: "The burden is upon the prosecution to prove beyond a reasonable doubt that the Defendant was not ignorant or mistaken as to a

offense; however, a reckless mistake would not afford a defense to a charge based on a reckless state of mind.]
[Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the Defendant would be guilty of another offense had the situation been as the Defendant supposed. In such a case, the Defendant may be convicted of the offense of which the Defendant would be guilty had the situation been as the Defendant supposed.]
The burden is upon the prosecution to prove beyond a reasonable doubt that the Defendant was not ignorant or mistaken as to a fact that negates the state of mind required to establish an element of the offense. If the prosecution fails to meet its burden, then you must find the Defendant not guilty.

fact that negates the state of mind required to establish an element of the offense. If the prosecution fails to meet its burden, then you must find the Defendant not guilty."

■■■■ However, as Eberly never requested that the jury be so instructed, the circuit court's instructions to the jury are reviewed only for plain error. *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642 ("As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error."). Plain error may be noticed "when the error committed affects substantial rights of the defendant." *State v. Cordeiro*, 99 Hawai'i 390, 405, 56 P.3d 692, 707 (2002) (internal quotation marks and citation omitted). "[W]here the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected[.]" *State v. Jones*, 96 Hawai'i 161, 168, 29 P.3d 351, 358 (2001) (internal quotation marks, citation, ellipsis, and footnote omitted).

In *State v. Locquiao*, 100 Hawai'i 195, 58 P.3d 1242 (2002), the defendant was charged with promoting a dangerous drug in the third degree and unlawful use of drug paraphernalia. The supreme court noted that the

> prosecution bore the burden of proving beyond a reasonable doubt . . . that Locquiao "knowingly" possessed methamphetamine in any amount and . . . that he "knowingly" used or possessed drug paraphernalia with the intent to use it to ingest, inhale, or otherwise introduce a controlled substance into the human body. Moreover, Locquiao's sole defense at trial was that he was unaware that the "glass

material" recovered . . . was an "ice pipe" and that the "glass material" contained methamphetamine. That being so, Locquiao was entitled to an instruction on the ignorance-or-mistake-of-fact defense, and the prosecution bore the burden of disproving the defense—it being an element of its case-in-chief—beyond a reasonable doubt.

*Id.* at 206, 58 P.3d at 1253.

■■■■ Eberly's defense, like Locquiao's, was that Eberly was ignorant or mistaken. Eberly testified that he did not know what was inside the blue bag and he grabbed the bag because he thought the police needed a warrant to search through Koide's stuff.[4] Eberly, therefore, was entitled to an instruction on the ignorance or mistake of fact defense, and the circuit court had the duty to properly instruct the jury because

> it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she shall state to them fully the law applicable to the facts. . . . In other words, the ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel.

*State v. Culkin*, 97 Hawai'i 206, 214, 35 P.3d 233, 241 (2001) (quoting *State v. Kinnane*, 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995)).

■■■ In a criminal trial, an "accused is entitled to an instruction on every defense supported by the evidence, no matter how inconclusive the evidence may be, provided that evidence would support consideration of that issue by the jury." *State v. McMillen*, 83 Hawai'i 264, 265, 925 P.2d 1088, 1089 (1996).[5]

---

4. Locquiao testified he was unaware that the "glass material" in the pocket of his pants was an illegal "ice pipe." *State v. Locquiao*, 100 Hawai'i 195, 201, 58 P.3d 1242, 1248 (2002).

5. HRS § 701–115 (1993) states in relevant part:

> **§ 701–115 Defenses.** (1) A defense is a fact or set of facts which negatives penal liability.
>
> (2) No defense may be considered by the trier of fact unless evidence of the specified

fact or facts has been presented. If such evidence is presented, then:

(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt.

. . . .

(3) A defense is an affirmative defense if:

(a) it is specifically so designated by the [Hawaii Penal] Code or another statute; or

"When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Valentine*, 93 Hawai'i 199, 204, 998 P.2d 479, 484 (2000) (internal quotation marks and citation omitted).

 In its answering brief, the State quotes *Locquiao*, 100 Hawai'i at 208, 58 P.3d at 1255, contending the jury received an instruction on ignorance or mistake of fact and was therefore " 'given the opportunity *expressly and separately* to consider [Eberly's] defense of ignorance ... at trial.' " (Italics in original.) Although the jurors did receive an instruction informing them that the State had the burden to show beyond a reasonable doubt that Eberly "intentionally" or "knowingly" owned, possessed, or controlled a firearm on July 17, 1995, the jurors were not instructed as required that the State was required to disprove beyond a reasonable doubt Eberly's ignorance or mistake of fact defense. *Culkin*, 97 Hawai'i at 218, 35 P.3d at 245.

> Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.
>
> Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a *reasonable possibility that error may have contributed to conviction.* If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*Locquiao*, 100 Hawai'i at 203, 58 P.3d at 1250 (brackets omitted; emphasis added) (quoting *State v. Hironaka*, 99 Hawai'i 198, 204, 53 P.3d 806, 812 (2002)).

> (b) If the Code or another statute plainly requires the defendant to prove the defense by

 A reasonable juror could have concluded that Eberly's ignorance was an honest mistake and that Eberly did not know what was in the bag. By failing to properly instruct the jury, the circuit court had, in effect, relieved the State of its burden of disproving beyond a reasonable doubt Eberly's ignorance or mistake of fact. *Locquiao*, 100 Hawai'i at 202, 58 P.3d at 1249. "Where the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected." *Id.* at 206, 58 P.3d at 1253 (internal quotation marks, citation, brackets, and ellipses omitted).

In *Locquiao*, the supreme court noted that

> the legislature intended that a jury consider, separate and apart from the substantive elements, whether a defendant's mistaken belief should negate the requisite culpability for the charged offense.... [Since] ignorance or mistake of fact is a statutory defense in Hawai'i, ... where a defendant has adduced evidence at trial supporting an instruction on the statutory defense of ignorance or mistake of fact, the trial court must, at defendant's request, separately instruct as to the defense, notwithstanding that the trial court has also instructed regarding the state of mind requisite to the charged offense.

*Id.* at 208, 58 P.3d at 1255.

We conclude there is a reasonable possibility that the circuit court's error may have contributed to Eberly's conviction and the error was not harmless beyond a reasonable doubt. *Id.* Therefore, we must vacate the Judgment and remand for a new trial.

Because we are vacating and remanding based on improper jury instructions, we do not need to address Eberly's claims of improper jury questions and ineffective assistance of counsel.

> a preponderance of the evidence.

## IV.

The circuit court erred by improperly instructing the jury. Therefore, the Judgment filed on October 12, 2001 in the Circuit Court of the First Circuit is vacated, and this case is remanded with instructions for a new trial.

### Dissenting Opinion by NAKAMURA, J.

Defendant–Appellant Bardwell Eberly (Eberly) challenges his two convictions for being a felon in possession of a firearm. Eberly's sole defense at trial was that he was ignorant of the fact that the bag he possessed contained two semi-automatic pistols. A fake identification with Eberly's picture, however, was found in a wallet in the bag. A security guard and a police officer also testified that when the security guard picked up the bag, Eberly snatched it from the guard. Eberly then struggled to keep the bag away from the police officers despite their repeated demands that Eberly drop the bag.[1]

For each firearm offense, the jury was instructed that the prosecution had to prove beyond a reasonable doubt that Eberly did "intentionally or knowingly" own, possess, or control a firearm. Because there was no evidence that Eberly was the owner of the two pistols apart from his possession of the bag, the case turned on whether Eberly knowingly or intentionally possessed or controlled the pistols in the bag. The trial court also gave the jury an instruction on Eberly's ignorance-of-fact defense, as follows:

> In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance if the ignorance negatives the state of mind required to establish an element of the offense.

This instruction tracked the language of the statute defining the defense, Hawaii Revised Statutes (HRS) § 702–218 (1993).[2] The trial court did not additionally instruct the jury that the prosecution had the burden of disproving Eberly's ignorance-of-fact defense beyond a reasonable doubt.

The majority concludes that the Hawai'I Supreme Court's decision in *State v. Locquiao*, 100 Hawai'i 195, 58 P.3d 1242 (2002), dictates that Eberly's firearm convictions be reversed. I respectfully disagree. *Locquiao* is distinguishable because, unlike in *Locquiao*, the jury in this case was given an instruction on Eberly's ignorance-of-fact defense.

Were it not for *Locquiao*, my analysis of Eberly's case would be straightforward. In order to find Eberly guilty under the *mens rea* instruction for the firearm offenses, the jury was required to find beyond a reasonable doubt that Eberly knew there were two firearms in the bag. As a matter of logic, the jury could not make this finding without also rejecting, beyond a reasonable doubt, Eberly's defense that he did not know what was in the bag. Accordingly, without *Locquiao*, I would have concluded that no separate instruction on Eberly's ignorance-of-fact defense nor on the prosecution's burden to disprove that defense was required.

*Locquiao*, however, held that the trial court must give a separate instruction on the statutory ignorance-or-mistake-of-fact defense even when the defense is subsumed within the *mens rea* instruction already given. *Id.* at 206–08, 58 P.3d at 1253–55. In support of its holding, the court cited cases from other jurisdictions concluding that a separate instruction on an ignorance-or-mistake-of-fact defense was necessary "in order to draw the jury's attention to the defendant's theory of the case." *Id.* at 207, 58 P.3d at 1254. The court concluded that the

---

1. There was also evidence that Defendant–Appellant Bardwell Eberly (Eberly) had five bullets in his pocket that were the same caliber as the pistols in the bag. The jury, however, did not rely on this evidence as the basis for finding Eberly guilty on the felon-in-possession-of-ammunition charge. In interrogatories accompanying the verdict on the ammunition charge, the jury identified Eberly's act of possessing "ammunition within the firearm," and not "the loose ammunition," as the basis for its guilty verdict.

2. Hawaii Revised Statutes (HRS) § 702–218 (1993) provides in relevant part:

 **§ 702–218 Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:

 (1) The ignorance or mistake negatives the state of mind required to establish an element of the offense[.]

trial court's error in failing to instruct on Locquiao's ignorance-or-mistake-of-fact defense was not harmless beyond a reasonable doubt "[i]nasmuch as the jury was not given the opportunity *expressly* and *separately* to consider Locquiao's defense." *Id.* at 208, 58 P.3d at 1255. (Emphasis in original).

In my view, *Locquiao* is not dispositive. In *Locquiao*, the trial court refused to give *any* instruction on the defendant's ignorance-or-mistake-of-fact defense. *Id.* at 201, 58 P.3d at 1248. Here, the trial court gave the jury an instruction on Eberly's ignorance-of-fact defense in the language of the statutory defense.[3] Thus, Eberly's case turns on an issue not presented in *Locquiao*—whether the trial court's instruction on an ignorance-of-fact defense, but not on the prosecution's burden to disprove that defense, requires that Eberly's convictions be vacated.

The standard of review for determining the adequacy of jury instructions is "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Valentine*, 93 Hawai'i 199, 204, 998 P.2d 479, 484 (2000). Unlike in *Locquiao*, the instruction on Eberly's ignorance-of-fact defense gave the jury the opportunity to expressly and separately consider his defense. The primary concern expressed in *Locquiao* was therefore substantially addressed in Eberly's case.

The instructions on Eberly's ignorance-of-fact defense and the *mens rea* required for each firearm offense, when read and considered as a whole, were not "prejudicially insufficient, erroneous, inconsistent, or misleading." *Valentine*, 93 Hawai'i at 204, 998 P.2d at 484. The jury was instructed that the prosecution had the burden of proving beyond a reasonable doubt that Eberly knowingly or intentionally possessed or controlled a firearm. The jury was also instructed that Eberly had a defense if his ignorance negated the state of mind required to establish the offense. Based on these instructions, the jury could not have found Eberly guilty unless it determined that the

prosecution had disproved Eberly's ignorance-of-fact defense beyond a reasonable doubt. Any error in failing to instruct on the prosecution's burden to disprove this defense was therefore harmless beyond a reasonable doubt. Had the jury received the instruction Eberly claims was erroneously omitted, there is no reasonable possibility that the outcome of Eberly's case would have been different.

The other claims Eberly raises on appeal are without merit. Eberly has failed to show that his trial counsel provided ineffective assistance or that the court erred in allowing the jury to ask questions of witnesses. I would affirm Eberly's firearm convictions and therefore respectfully dissent.

---

**3.** The instruction given by the trial court in this case was nearly identical to the instruction requested by the defense but refused in *State v.*

*Locquiao*, 100 Hawai'i 195, 201, 58 P.3d 1242, 1248 (2002).