112 P.3d 725

**STATE of Hawai'i, Plaintiff–Appellee–Petitioner,**

v.

**Bardwell EBERLY, Defendant–Appellant–Respondent.**

**No. 24750.**

Supreme Court of Hawai'i.

June 2, 2005.

Daniel H. Shimizu, deputy prosecuting attorney, on the application, for plaintiff-appellee-petitioner State of Hawai'i.

LEVINSON, DUFFY, and ACOBA, JJ.; and MOON, C.J., dissenting; and NAKAYAMA, J., dissenting.

## Opinion of the Court by LEVINSON, J.

On April 12, 2005, the plaintiff-appellee-petitioner State of Hawai'i [hereinafter, "the prosecution"], filed an application for a writ of certiorari, requesting that this court review the published decision of the Intermediate Court of Appeals (ICA) in *State v. Eberly*, No. 24750, 108 Hawai'i 61, 116 P.3d 703, 2005 WL 605551 (Haw.App. Mar 15, 2005) [hereinafter, "the ICA's opinion"], (1) vacating the October 12, 2001 judgment of the circuit court of the first circuit, the Honorable Michael A. Town presiding, which convicted the defendant-appellant-respondent Bardwell Eberly of and sentenced him for the offenses of (a) possession of a firearm by a person convicted of certain crimes, in violation of Hawai'i Revised Statutes (HRS) §§ 134–7(b) and (h) (Supp.1995) [1] (Counts I and II), and (b) possession of ammunition by a person convicted of certain crimes, in violation of HRS §§ 134–7(b) and (h) (Count III), and (2) remanding the present matter to the circuit court for a new trial. On April 18, 2005, we granted the prosecution's application.

The prosecution contends that "the ICA erred in vacating Eberly's firearms convictions as the circuit court did not commit plain error when it did not instruct the jury that the [prosecution] was required to disprove beyond a reasonable doubt Eberly's ignorance or mistake of fact defense."

We granted certiorari because the ICA's opinion is "inconsisten[t]," *see* HRS § 602–59(b) (1993), with *State v. Locquiao*, 100 Hawai'i 195, 58 P.3d 1242 (2002), to the extent that the narrow holding of *Locquiao* does not, in and of itself, expressly mandate that trial courts specifically instruct juries that the prosecution bears the burden of proving beyond a reasonable doubt that defendants, who have adequately raised the non-affirmative defense, were *not* ignorant or mistaken as to a fact that negatives the state of mind required to establish an element of the offense or offenses with which they are charged. Nevertheless, we now hold, consistently with our jurisprudence regarding other non-affirmative defenses, that trial courts must specifically instruct juries, where the record so warrants, that the burden is upon the prosecution to prove beyond a reasonable doubt that the defendant was not ignorant or mistaken as to a fact that negates the state of mind required to establish an element of the charged offense or offenses. Accordingly, we (1) affirm the ICA's opinion on different grounds, (2) vacate the circuit court's October 12, 2001 judgment, and (3) remand this matter to the circuit court for a new trial.

## I.  BACKGROUND

### A.  Factual And Procedural History

The following facts, adduced in the circuit court and recited in the ICA's opinion, are undisputed in the prosecution's application:

Eberly was indicted on September 4, 1997 for Possession of a Firearm by a Person Convicted of Certain Crimes and Possession of Ammunition by a Person Convicted of Certain Crimes. The following evidence was adduced at the jury trial, which began on July 10, 2001.

On July 17, 1995, Eberly went to room 356 at the Outrigger West Hotel to pick up a fake identification card (ID) Eberly had purchased from Bert Koide (Koide). After Eberly arrived, Koide received a phone call and left the room. Eberly testified that Koide told him "not to let nobody in the room" because Koide did not want

---

1.  HRS §§ 134–7(b) and (h) provide in relevant part:

    **§ 134–7  Ownership or possession prohibited, when; penalty.**

    . . . .

    (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having

committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

. . . .

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. . . .

anyone "touching the girl's stuff, or his bag."

That same day, Police Officers Paul Ledesma (Ledesma) and Robert Stepien (Stepien) (collectively, the Officers) were dispatched to the Outrigger West Hotel to investigate the possible fraudulent use of a credit card. The Officers arrived at the hotel and met with Outrigger Security Officer Chris Waggoner (Waggoner). Waggoner informed the Officers that room 356 was registered to Koide and the room had been rented with a stolen credit card. Ledesma, Stepien, and Waggoner went to the room, and Waggoner knocked on the door.

Eberly answered the door, and the Officers asked if Koide was in. Eberly responded no. Waggoner told Eberly he was going to "trespass" Eberly because Eberly should not have been in the room without Koide since Koide was the only registered guest.

Waggoner entered the room, followed by the Officers, to make sure Koide was not in the room. Waggoner saw a blue bag near the bed and asked Eberly if the bag was his. Both Waggoner and Ledesma testified that Eberly did not respond. Waggoner informed Eberly that it was hotel policy to inventory all the property inside the room. Waggoner picked up the blue bag and started to open it. Eberly testified he told Waggoner twice that Waggoner could not open the bag and once that Waggoner needed a warrant. Eberly testified he told Waggoner the bag was not his. Eberly also testified that he had not touched, lifted up, opened up, or looked inside the blue bag and did not know what was in it, and "as far as [he] knew it was [Koide's] bag."

Eberly testified that Waggoner partially unzipped the bag, zipped it back up, handed the bag to Eberly, and Eberly "grabbed the bag." When Eberly grabbed the bag, Waggoner said "there's weapons in the bag." Eberly testified that he "froze with fear."

Waggoner and Ledesma testified that when Waggoner picked up the bag, Eberly grabbed it away from Waggoner and starting moving toward the far end of the room with the bag near his belt line. Ledesma testified that he thought a weapon could be in the bag, so he told Eberly to drop the bag. Eberly did not follow Ledesma's instructions and started walking away. Ledesma grabbed Eberly's left arm, and Stepien grabbed Eberly's right arm. The Officers struggled with Eberly, trying to get Eberly to drop the bag. Waggoner grabbed the bag out of Eberly's hand and threw it on the floor. The Officers finally took Eberly to the ground and put handcuffs on him.

Eberly testified that after the Officers grabbed him, one of them started hitting him in the ribs and the other one got him in a "choke hold." Ledesma testified that no one put Eberly into a choke hold. Waggoner testified that Ledesma and Stepien struck Eberly in the ribs twice trying to get Eberly to drop the bag, but he did not see either officer put Eberly in a choke hold.

The blue bag was partially open, and Ledesma saw a gun in the bag. When the Officers opened the bag, they discovered, among other things, two guns, a clip to hold bullets, a bullet and casing, a Florida driver's license with Eberly's picture on it but with a different name, and another ID card. Stepien searched Eberly and discovered bullets in Eberly's pants pocket. Waggoner testified that he saw bullets on the floor. Eberly denied that he had any bullets or that Stepien recovered any bullets from his pocket. Eberly testified that one of the police officers who showed up later dropped the bullets on the ground, and when Eberly first saw the bullets, they were on the ground. Eberly also saw several ID cards on the ground next to him. The Officers subsequently arrested Eberly.

During the trial, the circuit court allowed the jury to submit questions to witnesses solely to clarify facts of the case. Eberly made a general objection to all questions from the jury. The jury asked three questions. The circuit court allowed two of the three questions and allowed both sides to ask follow-up questions.

After the [prosecution] rested its case, Eberly moved for a judgment of acquittal, which the circuit court denied after oral argument. At the end of the trial, Eberly renewed his motion for judgment of acquittal, which the court again denied. On July 16, 2001, the jury returned guilty verdicts on all charges. Eberly filed a motion on July 23, 2001 requesting a new trial and a motion on July 25, 2001 for judgment of acquittal.

On September 14, 2001, the [prosecution] filed a Motion for Sentencing of Repeat Offender and a Motion for Extended Term of Imprisonment based on Eberly's prior criminal history and current multiple convictions. The circuit court sentenced Eberly on Counts I and II to an extended twenty-year term of imprisonment on each count, with a mandatory minimum term of imprisonment of three years and four months. The circuit court took no action on Count III. The Judgment was filed on October 12, 2001.

On November 23, 2001, the circuit court entered its Findings of Fact, Conclusions of Law, and Order Denying Motion for Judgment of Acquittal or for New Trial. On December 4, 2001, the circuit court filed an Order Granting Motion for Sentencing of Repeat Offender. The circuit court entered its Finding of Facts, Conclusions of Law, and Order Granting Motion for Extended Term of Imprisonment on December 7, 2001. Eberly timely appealed.

ICA's opinion, at 63–64, 116 P.3d at 705–06, 2005 WL 605551.

### B. *Jury Instructions*

As the ICA noted,

[t]he jury instruction presented to the jury, without objection by Eberly, was: "In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance if the ignorance negatives the state of mind required to establish an element of the offense."

Eberly had requested the following jury instruction:

In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance if the ignorance negatives the state of mind required to establish an element of the offense. Therefore, if you have any reasonable doubt that the defendant did not know there were handguns in the bag, you must find the Defendant not guilty of Counts I and II.[2]

(Footnote added.)

The State objected to the second sentence of the instruction, and the circuit court ruled that it would "give ... sentence one only, because the second one does I think comment on the evidence. [Counsel] can argue that. Somebody's ignorant, that negatives their [sic] state of mind."

**2.** In its footnote, the ICA commented that

[t]he first sentence of the requested instruction essentially tracked the language of the first paragraph of Hawai'i Pattern Jury Instructions—Criminal (HAWJIC) 7.13, deleting, however, the reference to mistake of fact. HAWJIC 7.13 (2001) read as follows:

7.13   IGNORANCE OR MISTAKE OF FACT

In any prosecution for an offense, it is a defense that the Defendant engaged in the prohibited conduct under ignorance or mistake of fact if the ignorance or mistake negates the state of mind required to establish an element of the offense.

[Thus, for example, a person is provided a defense to a charge based on an intentional or knowing state of mind, if the person is mistaken (either reasonably, negligently, or recklessly) as to a fact that negates the person's state of mind required to establish an element of the offense; however, a reckless mistake would

not afford a defense to a charge based on a reckless state of mind.]

[Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the Defendant would be guilty of another offense had the situation been as the Defendant supposed. In such a case, the Defendant may be convicted of the offense of which the Defendant would be guilty had the situation been as the Defendant supposed.]

The burden is upon the prosecution to prove beyond a reasonable doubt that the Defendant was not ignorant or mistaken as to a fact that negates the state of mind required to establish an element of the offense. If the prosecution fails to meet its burden, then you must find the Defendant not guilty.

ICA's opinion, at 65 n. 3, 116 P.3d at 707 n. 3, 2005 WL 605551.

ICA's opinion, at 65, 116 P.3d at 707, 2005 WL 605551 (some brackets added and some in original) (ellipsis points in original). The circuit court further instructed the jury in relevant part as follows:

> A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct. A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances, or believes or hopes that they exist.
>
> A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.
>
> A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature. A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

In count[s] 1 [and 2] of the indictment the defendant is charged with the offense of possession of a firearm by a person convicted of certain crimes. A person commits the offense of possession of a firearm by a person convicted of certain crimes if, having previously been convicted of a felony he *intentionally or knowingly* owns, possesses or controls any firearm.

There are three elements to the offense of possession of a firearm by a person convicted of certain crimes, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are: 1, that on or about the 17th day of July, 1995, in the City and County of Honolulu, State of Hawai'i, the defendant did own, possess or control any firearm, and 2, that the defendant was a person who had previously been convicted of having committed a felony; and 3, *the defendant did so intentionally or knowingly.*

> . . . .

In count 3 of the indictment the defendant is charged with the offense of posses-sion of ammunition by a person convicted of certain crimes. The person commits the offense of possession of ammunition by a person convicted of certain crimes if, having previously been convicted of a felony, he *intentionally or knowingly* owns, possesses or controls any ammunition for a firearm.

There are three elements to the offense of possession of ammunition by a person convicted of certain crimes, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are: 1, that on or about the 17th day of July, 1995, in the City and County of Honolulu, State of Hawai'i, the defendant did own, possess or control any ammunition for a firearm; and 2, that the defendant was a person who had previously been convicted of having committed a felony; and 3, *the defendant did so intentionally or knowingly.*

> . . . .

A person is in possession of an object if the person *knowingly* procured or received the thing possessed, or was *aware* of his control of it for a sufficient period to have terminated his possession.

The law recognizes two kinds of possession, actual possession and constructive possession. A person who, although not in actual possession, *knowingly* has both the power and the *intention* at a given time to exercise dominion or control over a thing for a sufficient period to terminate his possession of it, either directly or through another person or persons, is then in constructive possession of it.

> . . . .

The element of possession has been proved if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either solely or jointly[ ] with others.

(Emphases added.)

## C. Consideration of Eberly's Appeal by the ICA

On December 10, 2001, Eberly filed a timely notice of appeal, raising the following points of error:

(1) [that] the circuit court provided an insufficient jury instruction on the defense of ignorance or mistake of fact[;] (2) [that] Eberly received ineffective assistance of counsel[;] and (3) [that] the circuit court violated Eberly's right to a fair trial by allowing the jurors to ask improper questions of witnesses.

ICA's opinion, at 63, 116 P.3d at 705, 2005 WL 605551. The ICA, to which we assigned the appeal in the first instance, *see* Hawai'i Revised Statutes (HRS) § 602–5(8) (1993) and Hawai'i Rules of Appellate Procedure Rule 31(a) (2005), noted that Eberly further

> assert[ed] that paragraph four of Hawai'i Pattern Jury Instructions—Criminal (HAWJIC) 7.13 should have been included in the instructions to the jury and his substantial rights were harmed by its absence. Paragraph four of HAWJIC 7.13 provides: "The burden is upon the prosecution to prove beyond a reasonable doubt that the Defendant was not ignorant or mistaken as to a fact that negates the state of mind required to establish an element of the offense. If the prosecution fails to meet its burden, then you must find the Defendant not guilty."

ICA's opinion, at 65–66, 116 P.3d at 707–08, 2005 WL 605551. The prosecution responded: (1) that Eberly's "substantial rights were not affected by the [circuit] court's instructions to the jury regarding the defense of ignorance"; (2) that Eberly "was provided with the effective assistance of counsel"; and (3) that "the [circuit] court did not abuse its

discretion by permitting the juror question to [the witness]. . . ." Eberly replied: (1) that "a criminal jury must expressly and separately determine whether the State has satisfied its burden of disproving beyond a reasonable doubt each element of the defense of ignorance or mistake of fact"; (2) that "sufficient evidence of trial counsel's ineffective assistance has been presented"; and (3) that "the trial court's failure to carefully weigh the potential detriment to [Eberly] prior to directing . . . [the witness] to answer [the juror question] was an abuse of discretion."

### D. *The ICA's Opinion*

On March 15, 2005, the ICA issued its published opinion in the present matter. Reviewing the record for plain error,[3] the ICA reasoned and held, *inter alia*, as follows:

> In *State v. Locquiao*, 100 Hawai'i 195, 58 P.3d 1242 (2002), the defendant was charged with promoting a dangerous drug in the third degree and unlawful use of drug paraphernalia. The supreme court noted that the
>
>> prosecution bore the burden of proving beyond a reasonable doubt . . . that Locquiao "knowingly" possessed methamphetamine in any amount and . . . that he "knowingly" used or possessed drug paraphernalia with the intent to use it to ingest, inhale, or otherwise introduce a controlled substance into the human body. Moreover, Locquiao's sole defense at trial was that he was unaware

---

**3.** [Because] Eberly never requested that the jury [be read paragraph four of HAWJIC 7.13], the circuit court's instructions to the jury are reviewed only for plain error. [*State v. JSawyer*, 88 Hawai'i [325,] 330, 966 P.2d [637,] 642 [(1998)] ("As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error."). Plain error may be noticed "when the error committed affects substantial rights of the defendant." *State v. Cordeiro*, 99 Hawai'i 390, 405, 56 P.3d 692, 707 (2002) (internal quotation marks and citation omitted). "[W]here the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected[.]" *State v. Jones*, 96 Hawai'i 161, 168, 29

P.3d 351, 358 (2001) (internal quotation marks, citation, ellipsis, and footnote omitted).

ICA's opinion, at 66, 116 P.3d at 708, 2005 WL 605551. It is unfortunate that the circuit court apparently failed to file in the record a written set of the jury instructions actually given, including any modifications of the instructions as originally proposed and bearing the customary stamp and notations reflecting whether each instruction was given by agreement or over the objection of one or more of the parties. Although the ICA correctly reviewed the absence of paragraph four of HAWJIC 7.13—which, as noted, is one of Eberly's points of error on appeal—for plain error because Eberly did not specifically request it, the circuit court's failure to ensure a complete record of the settlement of jury instructions would often impede, and even cripple, appellate review.

that the "glass material" recovered ... was an "ice pipe" and that the "glass material" contained methamphetamine. *That being so, Locquiao was entitled to an instruction on the ignorance-or-mistake-of-fact defense, and the prosecution bore the burden of disproving the defense—it being an element of its case-in-chief—beyond a reasonable doubt.*

*Id.* at 206, 58 P.3d at 1253.

. . . .

A reasonable juror could have concluded that Eberly's ignorance was an honest mistake and that Eberly did not know what was in the bag. By failing to properly instruct the jury, the circuit court had, in effect, relieved the State of its burden of disproving beyond a reasonable doubt Eberly's ignorance or mistake of fact. *Locquiao*, 100 Hawai'i at 202, 58 P.3d at 1249. *"Where the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected."* *Id.* at 206, 58 P.3d at 1253 (internal quotation marks, citation, brackets, and ellipses omitted).

In *Locquiao*, the supreme court noted that

the legislature intended that a jury consider, separate and apart from the substantive elements, whether a defendant's mistaken belief should negate the requisite culpability for the charged offense. . . . [Since] ignorance or mistake of fact is a statutory defense in Hawai'i, . . . where a defendant has adduced evidence at trial supporting an instruction on the statutory defense of ignorance or mistake of fact, *the trial court must, at defendant's request, separately instruct as to the defense, notwithstanding that the trial court has also instructed re-*

*garding the state of mind requisite to the charged offense.*

*Id.* at 208, 58 P.3d at 1255.

We conclude there is a reasonable possibility that the circuit court's error may have contributed to Eberly's conviction and the error was not harmless beyond a reasonable doubt. *Id.* Therefore, we must vacate the Judgment and remand for a new trial.

Because we are vacating and remanding based on improper jury instructions, we do not need to address Eberly's claims of improper jury questions and ineffective assistance of counsel.

ICA's opinion, at 66–67, 116 P.3d at 708–09, 2005 WL 605551 (emphasis added) (brackets and ellipsis points in original).

### E. *Judge Nakamura's Dissent*

Judge Nakamura set forth the following analysis in his dissent:

. . . [The jury] instruction [on Eberly's mistake-of-fact defense] tracked the language of the statute defining the defense, Hawaii Revised Statutes (HRS) § 702–218 (1993).[4] The trial court did not additionally instruct the jury that the prosecution had the burden of disproving Eberly's ignorance-of-fact defense beyond a reasonable doubt.

The majority concludes that the Hawai'i Supreme Court's decision in *State v. Locquiao*, 100 Hawai'i 195, 58 P.3d 1242 (2002), dictates that Eberly's firearm convictions be reversed. I respectfully disagree. *Locquiao* is distinguishable because, unlike in *Locquiao*, the jury in this case was given an instruction on Eberly's ignorance-of-fact defense.

. . . .

In my view, *Locquiao* is not dispositive. In *Locquiao*, the trial court refused to give *any* instruction on the defendant's ignorance-or-mistake-of-fact defense. *Id.* at

---

4. HRS § 702–218 (1993) provides in relevant part:

§ **702–218 Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the pro-

hibited conduct under ignorance or mistake of fact if:

(1) The ignorance or mistake negatives the state of mind required to establish an element of the offense[.]

201, 58 P.3d at 1248. Here, the trial court gave the jury an instruction on Eberly's ignorance-of-fact defense in the language of the statutory defense.[5] Thus, Eberly's case turns on an issue not presented in *Locquiao*—whether the trial court's instruction on an ignorance-of-fact defense, but not on the prosecution's burden to disprove that defense, requires that Eberly's convictions be vacated.

The standard of review for determining the adequacy of jury instructions is "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Valentine*, 93 Hawai'i 199, 204, 998 P.2d 479, 484 (2000). Unlike in *Locquiao*, the instruction on Eberly's ignorance-of-fact defense gave the jury the opportunity to expressly and separately consider his defense. The primary concern expressed in *Locquiao* was therefore substantially addressed in Eberly's case.

The instructions on Eberly's ignorance-of-fact defense and the *mens rea* required for each firearm offense, when read and considered as a whole, were not "prejudicially insufficient, erroneous, inconsistent, or misleading." *Valentine*, 93 Hawai'i at 204, 998 P.2d at 484. The jury was instructed that the prosecution had the burden of proving beyond a reasonable doubt that Eberly knowingly or intentionally possessed or controlled a firearm. The jury was also instructed that Eberly had a defense if his ignorance negated the state of mind required to establish the offense. Based on these instructions, the jury could not have found Eberly guilty unless it determined that the prosecution had disproved Eberly's ignorance-of-fact defense beyond a reasonable doubt. Any error in failing to instruct on the prosecution's burden to disprove this defense was therefore harmless beyond a reasonable doubt. Had the jury received the instruction Eberly claims was erroneously omitted, there is no

reasonable possibility that the outcome of Eberly's case would have been different.

The other claims Eberly raises on appeal are without merit. Eberly has failed to show that his trial counsel provided ineffective assistance or that the court erred in allowing the jury to ask questions of witnesses. I would affirm Eberly's firearm convictions and therefore respectfully dissent.

Dissenting opinion, at 68–69, 116 P.3d at 710–11, 2005 WL 605551 (emphasis in original).

On April 12, 2005, the prosecution timely filed an application for writ of certiorari. On April 18, 2005, we granted certiorari.

## II. STANDARD OF REVIEW

Appeals from the ICA are governed by HRS § 602–59(b) (1993), which prescribes that

> an application for writ of certiorari shall tersely state its grounds which must include (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal.

*In re Jane Doe, Born on June 20, 1995*, 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001).

## III. DISCUSSION

In its application, the prosecution "disagrees with the ICA that the circuit court's instructions, when read and considered as a whole, had the effect of relieving the State of its burden of disproving beyond a reasonable doubt Eberly's ignorance defense." The prosecution "agrees with Judge Nakamura['s dissent]," which, *inter alia*, argued (1) that the *Locquiao* decision does not expressly require circuit courts to instruct juries that the prosecution bears the burden of disproving the non-affirmative defense of mistake-of-fact

---

5.  Judge Nakamura noted at 69 n. 3, 116 P.3d at 711 n. 3, 2005 WL 605551 of his dissenting opinion that "[t]he instruction given by the trial court in this case was nearly identical to the instruction requested by the defense but refused in *State v. Locquiao*, 100 Hawai'i 195, 201, 58 P.3d 1242, 1248 (2002)."

and (2) that, in any case, the jury instructions at issue in this case, when read as a whole, adequately communicated the prosecution's burden of disproving Eberly's defense of mistake-of-fact beyond a reasonable doubt. We agree with Judge Nakamura's first assertion but disagree with his second, namely, that the circuit court's failure to administer a jury instruction as to the prosecution's burden of disproving Eberly's mistake-of-fact defense did not affect Eberly's substantial rights, thereby constituting plain error.

A. *The Narrow Holding In Locquiao Does Not Expressly Require Trial Courts To Instruct Juries As To The Prosecution's Burden Of Disproving Non–Affirmative Defenses.*

At issue in *Locquiao* was a trial court's refusal to give the defendant's proposed instruction—or any other—regarding his adequately raised defense of ignorance or mistake of fact. *Locquiao,* 100 Hawai'i at 201, 58 P.3d at 1248. *Locquiao* ultimately held

that, where a defendant has adduced evidence at trial supporting an instruction on the statutory defense of ignorance or mistake of fact, the trial court must, at the defendant's request, separately instruct as to the defense, notwithstanding that the trial court has also instructed regarding the state of mind requisite to the charged offense.

100 Hawai'i at 208, 58 P.3d at 1255.

It is noteworthy that the defendant's requested jury instruction in *Locquiao* advised only that, "[i]n any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if the ignorance or mistake negatives the state of mind required

to establish an element of the offense." *Id.* at 201, 58 P.3d at 1248. Strictly and technically speaking, therefore, the narrow holding of *Locquiao,* read in a vacuum, does not require the circuit court to give, where appropriate, anything more than the foregoing jury instruction. Correlatively, we agree with Judge Nakamura's observation that the circuit court in the present matter gave a jury instruction "nearly identical to the instruction requested by the defense but refused in ... *Locquiao* ...," *see supra* note 5. Judge Nakamura's dissenting opinion, however, disregards the context in which we articulated our holding in *Locquiao,* as well as the statutory and precedential matrix out of which that holding emerged.

B. *Based On Our Jurisprudence Regarding Other Non–Affirmative Defenses And Controlling Provisions Of The Hawai'i Penal Code, We Hold That Trial Courts Must Instruct Juries Regarding the Prosecution's Burden Of Disproving All Adequately Raised Non–Affirmative Defenses Beyond A Reasonable Doubt.*

The ICA's opinion highlighted the following propositions upon which our holding in *Locquiao* rested: (1) that, because Eberly's "sole defense at trial was" ignorance or mistake of fact, he "was entitled to an instruction on the ignorance-or-mistake-of-fact defense, and *the prosecution bore the burden of disproving the defense—it being an element of its case-in-chief—beyond a reasonable doubt[,]" id.,* at 67, 116 P.3d at 709, 2005 WL 605551 (internal quotation signals omitted) (emphasis added) (quoting *Locquiao,* 100 Hawai'i at 206, 58 P.3d at 1253 (citing HRS § 701–115(2)(a) (1993)));[6] and (2) that,

6. HRS § 701–115 (1993) defines affirmative and non-affirmative defenses as follows:

**Defenses.** (1) A defense is a fact or set of facts which negatives penal liability.
(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:
(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises

a reasonable doubt as to the defendant's guilt; or
(b) If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.
(3) A defense is an affirmative defense if:
(a) It is specifically so designated by the Code or another statute; or

" '[w]here the jury has been given instructions on a defense other than an affirmative defense but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected....' " *Id.* (quoting *Locquiao*, 100 Hawai'i at 206, 58 P.3d at 1253 (quoting *State v. Jones*, 96 Hawai'i 161, 168, 29 P.3d 351, 358 (2001) (quoting *Raines v. State*, 79 Hawai'i 219, 225, 900 P.2d 1286, 1292 (1995)))).

■ In *Raines*, the defendant (*i.e.*, Raines) filed a petition for post-conviction relief, which the circuit court denied, challenging his conviction of and sentence for the offenses of murder and two counts of forgery. 79 Hawai'i at 219–20, 900 P.2d at 1286–87. Raines appealed the circuit court's findings of fact, conclusions of law, and order denying his petition, arguing, *inter alia*, that his trial counsel rendered ineffective assistance by failing to request appropriate instructions with respect to the non-affirmative mitigating defense of extreme mental or emotional disturbance for which there was a reasonable explanation (EMED).[7] *Id.* at 219–23, 900 P.2d at 1286–90. The circuit court had instructed the jury in relevant part as follows:

> A person commits [the] offense [of murder] if he intentionally or knowingly causes the death of another person.
>
> There are two material elements to this offense, each of which must be proven beyond a reasonable doubt by the State. If the State has done so, you are to convict. And if the State has failed to do so, you are to acquit.
>
> The two material elements are:
>
> 1[.] That the defendant caused the death of another person ... by slashing him with a sharp instrument; [and]
>
> 2[.] that the defendant did so either intentionally or knowingly.

> (b) If the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence.

7. Prior to May 19, 2003, EMED was a non-affirmative defense. In 2003, the legislature

> If you find that the offense of murder has been proved from the evidence beyond a reasonable doubt, you must then consider whether the defendant is guilty of the reduced offense of manslaughter.
>
> *In a prosecution for murder it is a defense which reduces the offense to manslaughter that the defendant was, at the time he caused the death of the other person, under the influence of an extreme emotional disturbance for which there is a reasonable explanation.*
>
> . . . .
>
> The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.
>
> *Under [Hawai'i] law[,] the lawful use of force to protect oneself is a complete justification for conduct which would otherwise be criminal. The justification of self defense is a complete defense to murder and is also a complete defense to manslaughter.*
>
> . . . .
>
> You must consider the reasonableness of the accused's belief that he had to use deadly force to protect himself against death or serious bodily injury from the standpoint of a reasonable person placed in the position of the accused.
>
> . . . .
>
> *If you as members of the jury find that any evidence of self defense has been raised, then the State must prove beyond a reasonable doubt that the accused did not act in self defense. If you find that the State has failed to prove beyond a reasonable doubt that the accused did not act in self defense, you must find him not guilty of any offense.*

*Id.* at 224 n. 4, 900 P.2d at 1291 n. 4 (internal quotation signals omitted) (emphases added). This court reasoned and held that:

> amended HRS § 702–702(2), *inter alia*, to provide that, henceforth, EMED would constitute an affirmative defense to first and second degree murder or attempted murder. *See* 2003 Haw. Sess. L. Act 64, §§ 1 and 3 at 115–16.

Based on the instructions provided by the circuit court, ... there is a substantial risk that the jury may have mistakenly concluded that Raines had the burden of proving that he acted under an extreme emotional disturbance.[8] In *State v. McNulty*, 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), this court acknowledged the *possibility* that "[i]n failing to specifically allocate the burden of disproving self-defense to the [prosecution], the instructions could have permitted the jury to believe that the appellant, having raised the issue of justification, was obligated to prove it." *Id.* at 264, 588 P.2d at 444 (emphasis added) (citing, *inter alia, United States v. Corrigan*, 548 F.2d 879 (10th Cir.1977)). *See also* HRS § 702–205(b) (1985).[9] Nevertheless, relying on [Hawai'i Rules of Penal Procedure (HRPP) ] Rule 30(e) and cases from other jurisdictions,[10] the *McNulty* court held that "because he failed to object at trial,

appellant is now precluded from raising the failure of the court to give such an instruction as a ground for reversal on appeal, and *the court's general burden of proof instruction will be deemed sufficient to cover the issue of self-defense.*" 60 Haw. at 266, 588 P.2d at 444 (emphasis added), *cited with approval in State v. Pinero [Pinero II ]*, 75 Haw. 282, 291, 859 P.2d 1369, 1374 (1993).

On second look, we hold that *McNulty* was incorrectly decided. *We hold further that where, as here and in McNulty, the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected and plain error may be noticed.* See [State v. JKupau, 76 Hawai'i [387,] 393, 879 P.2d [492,] 498 [ (1994) ] (citing State v. Kelekolio*, 74 Haw.

8. The jury was specifically instructed that there were two elements to murder which had to be proven beyond a reasonable doubt: that Raines caused [the victim's] death and that he did so intentionally or knowingly. The jury was then instructed that acting under the influence of an extreme emotional disturbance was a defense in a murder prosecution. *No burden of proof was specified with respect to this defense. See, e.g.,* Hawaii [Hawai'i] Standard Jury Instructions, Criminal No. 5.02 (December 1991) ("The prosecution must prove beyond a reasonable doubt that the defendant was not, at the time he caused the death of [decedent], under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.") (Brackets and emphasis in original.). *Moreover, the jury was given a specific instruction with respect to the burden of proof for self-defense. The jury could have reasonably concluded that unless a specific burden of proof instruction was given for a particular defense, the defendant would have the burden of proving it. Of course, this would be an erroneous conclusion.* 79 Hawai'i at 224 n.7, 900 P.2d at 1291 n. 7 (emphases added) (some brackets added and some in original).

9. HRS § 702–205(b) provides in pertinent part that "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as ... [would n]egative a defense (other than a defense on the statute of limitations, lack of venue, or lack of jurisdiction)."

79 Hawai'i at 224 n.7, 900 P.2d at 1291 n. 7.

10. HRPP Rule 30(e) provides in pertinent part that "[n]o party may assign as error the giving or refusal to give, or the modification of, an instruction, ..., unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

All the cases cited in *McNulty* for the proposition that plain error need not be noticed where the trial court omitted a specific burden of proof instruction without objection, *see* 60 Haw. at 264–65, 588 P.2d at 443–44, dealt with self-defense or the defense of entrapment. Most of these cases are distinguishable from *State v. Pinero [Pinero II ]*, 75 Haw. 282, 859 P.2d 1369 (1993).... For example, the cases cited in *McNulty* involved circumstances where defense counsel stated during closing argument, without objection, that the prosecution had to prove the absence of self-defense beyond a reasonable doubt; the omission was very unlikely to affect the jury's determination; construing the record as a whole, the instructions were not misleading; the defense was inapplicable; or, the defense was not supported by the facts. *But see United States v. Levin*, 443 F.2d 1101 (8th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260 (1971) (based on the record, whether or not the defendant was guilty was not a close question); *Esposito v. United States*, 436 F.2d 603, 604 (9th Cir.1970) (claim that burden of proof instructions on entrapment defense deemed to have been waived).

79 Hawai'i at 225 n.9, 900 P.2d at 1292 n. 9.

479, 514–15, 849 P.2d 58, 74–75 (1993)). Accordingly, we now overrule *McNulty*.

Notwithstanding our disapproval of the dictum regarding *McNulty* in *Pinero II*, *see* 75 Haw. at 291, 859 P.2d at 1374, our analysis in the latter case is still correct. In *Pinero II*, we reviewed a mistyped instruction that omitted reckless manslaughter as an offense to be considered by the jury. We observed that notwithstanding HRPP Rule 30(e), erroneous instructions *may* be grounds for reversal despite counsel's failure to object at trial. *Id.* at 291–92, 859 P.2d at 1374 (citing HRPP Rule 52(b)).[11] "Where instructions were not objected to at trial, if the appellant overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Pinero II*, 75 Haw. at 292–93, 859 P.2d at 1374–75 (citing *State v. Pinero* [*Pinero I*], 70 Haw. 509, 525, 778 P.2d 704, 716 (1989)). After reviewing the instructions, verdict forms, and the record as a whole, we held that the trial court did not commit plain error because the jury was adequately informed that it had the option of finding Pinero guilty of reckless manslaughter as opposed to murder in the first degree. 75 Haw. at 290–97, 859 P.2d at 1373–76.

We recognize that

> [t]his court's power to deal with plain error is one to be exercised with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*Kupau*, 76 Hawai'i at 393, 879 P.2d at 498 (quoting *Kelekolio*, 74 Haw. at 514–15, 849 P.2d at 74–75) (citation omitted). *Nevertheless, based on our review of the jury instructions in the instant case, ... we hold that the circuit court's failure to provide burden of proof instructions with re-*spect to the mitigating defense of extreme emotional disturbance manslaughter constituted plain error. *See State v. Hoey*, 77 Hawai'i 17, 38–39, 881 P.2d 504, 525–26 (1994) (observing that it is ultimately the trial court's responsibility to ensure that the jury is properly instructed); *Kupau*, 76 Hawai'i at 392–96, 879 P.2d at 497–501. *Id.* at 225–26, 900 P.2d at 1292–93 (some emphases added and some in original) (some footnotes omitted).

Subsequent to *Raines*, this court has reaffirmed the principle that, when a defendant asserts a non-affirmative defense and adduces evidence in support thereof, the circuit court must instruct the jury as to the prosecution's burden of proof with respect to negativing the defense. *See, e.g., State v. Maelega*, 80 Hawai'i 172, 177, 907 P.2d 758, 763 (1995) (observing that, once a defendant had asserted and adduced evidence in support of the non-affirmative mitigating defense of EMED, "[t]he [circuit] court was then required to instruct the jury that the prosecution had the burden of disproving this defense beyond a reasonable doubt" (citing *Raines*)); *Jones*, 96 Hawai'i at 168, 29 P.3d at 358 (2001) (quoting *Raines*, 79 Hawai'i at 225, 900 P.2d at 1292, for the proposition that "where ... the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected and plain error may be noticed" (footnote omitted) (ellipsis points in original)); *Locquiao*, 100 Hawai'i at 206, 58 P.3d at 1253 (quoting *Jones* and *Raines*).

In the present matter, inasmuch as Eberly has asserted and adequately adduced evidence in support of his non-affirmative mistake-of-fact defense, *Locquiao* teaches both (1) that Eberly is entitled to a mistake-of-fact jury instruction and (2) that the prosecution bears the burden of disproving his defense beyond a reasonable doubt. But, consonant with our explications in *Jones*,

---

**11.** "HRPP Rule 52(b) provides in pertinent part that '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" 79 Hawai'i at 225 n. 10, 900 P.2d at 1292 n. 10.

*Raines,* and *Maelega,* as well as with the clear implication of *Locquiao,* when taken in context, we now expressly hold that trial courts must specifically instruct juries, where the record so warrants, that the burden is upon the prosecution to prove beyond a reasonable doubt that the defendant was not ignorant or mistaken as to a fact that negates the state of mind required to establish an element of the charged offense or offenses. We therefore hold that the circuit court plainly erred in failing to instruct the jury that the prosecution bore the burden of negativing Eberly's mistake-of-fact defense in a manner set forth in paragraph four of HAWJIC 7.13.

## IV. *CONCLUSION*

In light of our analysis *supra,* we (1) affirm the ICA's opinion on different grounds, (2) vacate the circuit court's October 12, 2001 judgment, and (3) remand this matter to the circuit court for a new trial.

Dissenting Opinion by MOON, C.J.

For the reasons stated by Justice Ramil in his dissenting opinion in *State v. Locquiao,* 100 Hawai‘i 195, 209, 58 P.3d 1242, 1256 (2002) (Ramil, J., dissenting), which I joined, I respectfully dissent from the majority's disposition of this case.

Dissenting Opinion by NAKAYAMA, J.

I dissent. I agree that the application for writ of certiorari should be granted, but would adopt the reasoning and result stated by Judge Nakamura in his dissent.