STATE OF HAWAI`I, Plaintiff-Appellee,
v.
ANGELA STENGER, Defendant-Appellant.
No. 27511.
Intermediate Court of Appeals of Hawaii.
December 31, 2008.
On the briefs:
Taryn R. Tomasa, Deputy Public Defender, for Defendant-Appellant.
Lawrence A. Goya, Senior Deputy Attorney General, Department of the Attorney, General, State of Hawai`i, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Defendant-Appellant Angela Stenger (Stenger)[1] appeals from the Judgment filed on August 24, 2005, in the Circuit Court of the First Circuit (circuit court).[2] Plaintiff-Appellee State of Hawai`i (State) charged Stenger by indictment with one count of first-degree theft by deception, in violation of Hawaii Revised Statutes (HRS) §§ 708-830(2) and 708-830.5(1)(a) (1993).[3] The charges stemmed from Stenger's alleged use of deception in obtaining more than $20,000 in welfare benefits. Following a jury trial, Stenger was found guilty as charged. The circuit court sentenced Stenger to five years of probation, subject to the condition that she serve a ninety-day term of imprisonment.
On appeal, Stenger asserts that the circuit court erred by: 1) refusing to give an instruction, as requested by Stenger, on the claim-of-right defense; 2) failing sua sponte to give a mistake-of-fact instruction; 3) giving instructions, to which Stenger had agreed, which failed to properly instruct the jury on the material elements for first-degree theft; and 4) refusing to give a specific unanimity instruction as requested by Stenger. We agree that the circuit court erred in denying Stenger's request that the jury be instructed on the claim-of-right defense, and we therefore vacate Stenger's conviction and remand for a new trial. We conclude that Stenger's other claims are without merit.

I.
Stenger, who was a prior recipient of welfare benefits from the State, re-applied for welfare benefits in 2002. Stenger met with Terri Cambra (Cambra), an eligibility supervisor with the Department of Human Services (DHS). Cambra reviewed Stenger's application and confirmed with Stenger the accuracy of the information Stenger provided. Cambra advised Stenger of Stenger's responsibility to report any changes in the composition of Stenger's household or financial situation within ten days and also to report those changes on a Monthly Eligibility Report Form (MERF) submitted to the DHS.
The State asserted that after Stenger's application for welfare benefits was approved, she either falsified critical information submitted to or withheld critical information from the DHS regarding her eligibility for welfare benefits. The State alleged that Stenger failed to report income she received as a substitute teacher from the Department of Education (DOE), income she received from her business, the Hawaii Surf Academy (HSA), and a $5,000 inheritance she received from her grandfather. The State further alleged that Stenger falsified information about when the second oldest of her four children left her household to live with Stenger's ex-husband on the mainland and deliberately withheld information that third persons were the primary caregivers for her newborn twins. As a result, the State claimed that Stenger received $23,034 in welfare benefits to which she was not entitled between July 2, 2002, and May 31, 2003.
In order to receive public assistance on behalf of a child, the recipient must care for the child more than fifteen days a month. The MERFs submitted by Stenger ask if anyone has moved in or out of her household. The State introduced evidence that Stenger had requested respite assistance for her newborn twins in October 2002. The women who volunteered to provide care for the twins testified that they soon became the primary caregivers for the twins and by the end of December 2002, the twins were residing with them. Stenger wrote a letter dated December 12, 2002, to the DHS stating that the volunteers watched the twins approximately two to three days a week. Stenger testified that the volunteers only watched the twins "a couple times a week;" that the twins were going back and forth between Stenger's house and the volunteers' houses; and that the amount of time the twins spend with the volunteers would vary on a weekly basis.
In January 2003, Stenger voluntarily sent her two oldest children to live with her ex-husband on the mainland, and Stenger signed documents giving the ex-husband full custody over the two children. Stenger reported in her January 2003 MERF that her oldest child had moved out but did not disclose that her second-oldest child had moved out until Stenger submitted her April 2003 MEFR. In the April 2003 MERF, Stenger identified April 23, 2003, as the date her second-oldest child moved out. Stenger testified that she waited to report the departure of her second-oldest child because she thought that child would return "in a few weeks or so."
In February 2003, Stenger wrote a note to the DHS stating that she had "started working" and requested assistance for child care. Stenger testified that she was referring to her return to substitute teaching in the note. However, Stenger stated that after writing the note, she had a difficult time finding reliable child care for her children and decided to focus on caring for her children. Stenger stipulated that she received a total of $1,670.22 for substitute teaching from October 2002 through May 2003. Stenger explained that she worked sporadically as a substitute teacher and did not report the income she earned because "[i]t wasn't regular."
Stenger was the sole signatory on the HSA's business checking account. Numerous deposits were made into HSA's business accounts after Stenger began receiving welfare benefits, including over $6,000 in credit card deposits and over $4,500 in check and cash deposits. Stenger did not disclose her HSA business account to the DHS and did not disclose the receipt of any income from HSA. Stenger also did not disclose her receipt of a $5,000 inheritance check.
The DHS initiated a fraud investigation of Stenger after receiving a fraud hotline complaint on May 6, 2003. The complaint raised questions about whether Stenger's children were living with her and whether Stenger may have been working for a business. By letter dated May 16, 2003, Stenger wrote to the DHS asking that she be taken off public assistance.

II.

A.
Stenger's counsel orally requested a claim-of-right jury instruction pursuant to HRS § 708-834 (1993 & Supp. 2007), arguing that "Stenger believed she was entitled to the benefits that she obtained and exerted control over." HRS § 708-834(1)(b) provides a claim-of-right defense to theft charges which states:
(1) It is a defense to a prosecution for theft that the defendant:
(b) Believed that the defendant was entitled to the property or services under a claim of right or that the defendant was authorized, by the owner or by law, to obtain or exert control as the defendant did t.]
(Emphasis added.)
In support of Stenger's request for the claim-of-right instruction, the defense asserted that Stenger had sent correspondence and submitted MERFs to the DHS which notified the DHS of changes regarding Stenger's child care and her employment situations. The defense argued that even if Stenger was not reporting these changes "in the right way," the jury could infer that Stenger believed that she was complying with the reporting requirements and thus believed she was entitled to the welfare benefits she received. The circuit court refused to give a claim-of-right instruction, ruling as follows:
The Court is going to refuse the instruction based on 708-834(b) [sic], because I don't think it really applies in this situation. The defendant never expressly indicated that she believed she was entitled to all the payments and financial aid, food stamps and medical benefits that she received because she had complied with all of the reporting requirements. And that's the Court's reason.
We conclude that the circuit court erred in refusing to instruct the jury on the claim-of-right defense pursuant to HRS § 708-834(1) (b). Unlike HRS § 708-834 (1) (b), the Model Penal Code (MPC) version of the claim-of-right defense requires a link between the defendant's conduct and his or her claim of right. The MPC provides that " [i]t is an affirmative defense to prosecution for theft that the actor:... acted under an honest claim of right to the property or services involved or that he had a right to acquire or dispose of it as he did[.]" Model Penal Code § 223.1(3) (b) (1980). Stenger does not contend that she acted (failed to accurately disclose material information) because of a claim-of-right to welfare benefits. Instead, she asserts that she did not disclose the information that the State alleges she deceptively concealed because she did not believe or know she was required to report such information. Because there was no link between Stenger's claim of right and her alleged unlawful conduct, Stenger would not have a claim-of-right defense under the MPC.
The HRS § 708-834 (1) (b) version of the claim-of-right defense, however, is broader than the MPC version. HRS § 708-834(1)(b) does not require that the defendant's claim of right prompted his or her conduct, but provides a defense to a theft charge if the defendant "[b]elieved that [he or she] was entitled to the property or services under a claim of right." Stenger's theory of defense was that she did not obtain the welfare benefits by deception because she honestly believed she had complied with the reporting requirements. Stenger either disputed the information the State alleged she dishonestly concealed or contended that she did not believe or know she was required to report such information. In support of her defense, Stenger introduced evidence that she had alerted the DHS to changes in her child care and employment situations, which she contended contradicted the State's allegations of deceptive concealment. We conclude that Stenger adduced sufficient evidence to warrant an instruction on her claim-of-right defense.
The State was required to prove as an essential element of Stenger's charged theft offense that Stenger obtained by deception welfare benefits to which she was not entitled. Thus, to prove the theft charge, the State would necessarily have to refute Stenger's contention that she believed she was entitled to the contested welfare benefits under a claim of right because she honestly believed she had complied with the reporting requirements. In an analogous situation, the Hawai'i Supreme Court held that a separate instruction on a statutory defense must be given even if the substance of the defense is sufficiently covered by the instruction on the required elements for the charged offense. State v. Locquiao, 100 Hawai'i 195, 205-08, 58 P.3d 1242, 1252-55 (2002). In Locquiao, the supreme court further held that the trial court's failure to instruct on the statutory defense was not harmless error. Id. Based on Locquiao, we conclude that the circuit court erred in refusing to give a claim-of-right instruction, and we vacate Stenger's conviction. See also State v. Eberly, 107 Hawai`i 239, 247-51, 112 P.3d 725, 733-37 (2005).

B.
Stenger asserts that the circuit court committed plain error in failing to instruct the jury on the mistake-of-fact defense.[4] We disagree.
Stenger contended that the twins were living with her more than fifteen days a month and thus disputed the State's contrary claim. In response to evidence that she had failed to disclose income from her HSA business, Stenger claimed that she had not been working for HSA. Stenger also explained that: 1) she did not report her second-oldest child's departure for several months because she thought that child would return in a few weeks; 2) she did not submit her DOE pay stubs because she was not working regularly as a substitute teacher; and 3) she did not report her $5,000 inheritance check because she asked to be taken off welfare the following month.
Stenger's claims do not support a mistake-of-fact defense. The evidence presented by Stenger did not show that she was mistaken about any material fact. Instead, Stenger either disputed the facts alleged by the State or conceded the alleged facts but provided an explanation as to why she did not believe she was required to report them. The only "mistake" claimed by Stenger was that she did not believe she was required to report certain of the undisputed events. However, a mistake concerning what was required to be reported was a mistake of law, not a mistake of fact.

C.
Stenger argues that the instructions on the first-degree theft offense were deficient because: 1) the circuit court used two separate instructions to apprise the jury of the State's burden a) to establish the time period of the offense and venue and b) to prove the material elements of the offense; and 2) the circuit court failed to properly instruct the jury on the required state of mind for the material elements. We conclude that these arguments are without merit.
The circuit court used one instruction to advise the jury that the State was required to prove that the offense occurred within the time period alleged in the indictment and that the offense occurred on Oahu. The court used a different instruction to define the material elements of the offense. Stenger contends that the circuit court erred in failing to combine these required matters of proof in a single instruction. We fail to see how the circuit court's decision to use two separate instructions instead of one constituted error or resulted in prejudice to Stenger. When read and considered as a whole, the two instructions were not prejudicially insufficient or erroneous. See State v. Padilla, 114 Hawai`i 507, 512-13, 164 P.3d 765, 770-71 (2007).
Despite agreeing to the instruction on the material elements of the first-degree theft offense, Stenger argues on appeal that the circuit court erred in instructing on the required state of mind. The circuit court's instruction provided in relevant part that:
There are five material elements to the offense of Theft in the First Degree, each of which the prosecution must prove beyond a reasonable doubt. These five elements
(1). That the defendant obtained and exerted control over the property of the State of Hawaii; and,
(2). That the defendant did so by deception; and,
(3). That the defendant did so with intent to deprive the State of Hawaii of the property; and,
(4). That the value of the property exceeded $20,000; and,
(5) That the defendant believed that the value of the property exceeded $20,000.
Pursuant to the definition of the term "deception" set forth in HRS § 708-800 (1993), the circuit court also instructed the jury that:
"Deception" occurs when a person knowingly:
(a). creates or confirms another's impression which is false and which the defendant does not believe to be true; or,
(b). fails to correct a false impression which he previously has created or confirmed.
Stenger argues that the material-elements instruction was deficient because it did not include a state-of-mind requirement for elements one and two. We disagree.
The state of mind required for element one is that Stenger acted intentionally. See State v. Mitchell, 88 Hawai`i 216, 222, 965 P.2d 149, 155 (1998). Referring back to elements one and two, element three states that "the defendant did so with intent to deprive the State of Hawaii of the property[.]" (Emphasis added.) Thus, to prove element three, the State was required to show that Stenger "obtained and exerted control over the property of the State of Hawaii ... with intent to deprive the State of Hawaii of the property." Stenger does not explain how she could have acted with intent to deprive the State of welfare benefits in this case without also intentionally obtaining and exerting control over those benefits. Accordingly, we conclude that when read and considered as a whole, the instruction on element one was not prejudicially insufficient or erroneous. Padilla, 114 Hawai'i at 512-13, 164 P.3d at 770-71.
Element two provides that the defendant engaged in the conduct described in element one (obtained and exerted control over the property of the State of Hawaii) "by deception[.]" The circuit court instructed the jury on the statutory definition of the term "deception" which requires proof that the defendant acted knowingly. Thus, the jury was adequately instructed on the state of mind required for element two.
We reject Stenger's claim that the circuit court erred by using the word "believed" rather than the term "intentionally" to describe the state of mind required for the attendant circumstance of the value of the property taken. Under the Hawai'i Penal Code, "[a] person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist." HRS § 702-206 (1) (b) (1993) (emphasis added). By requiring proof that Stenger believed that the value of the property exceeded $20,000, the instruction on element five necessarily required proof that Stenger acted intentionally with respect to the property-value attendant circumstance.

D.
Stenger contends that the circuit court erred by refusing to give a specific unanimity instruction. We disagree.
A specific unanimity instruction is required when separate and distinct culpable acts, any one of which could support a conviction, are subsumed within a single count and the prosecution fails to elect the specific act upon which it is relying. State v. Arceo, 84 Hawai`i 1, 32-33, 928 P.2d 843, 874-75 (1996); State v. Valentine, 93 Hawai`i 199, 208, 998 P.2d 479, 488 (2000). However, a specific unanimity instruction is not required if 1) the offense can be proven as a continuous offense and 2) "the prosecution alleges, adduces evidence of, and argues that the defendant's actions constituted a continuous course of conduct." State v. Apao, 95 Hawai`i 440, 447, 24 P. 3d 32, 39 (2001); State v. Hironaka, 99 Hawai`i 198, 207-09, 53 P.3d 806, 815-17 (2002).
In this case, the charged first-degree theft offense can be proven as a continuous offense. State v. Rabago, 103 Hawai`i 236, 248, 81 P.3d 1151, 1163 (2003) (stating that theft by deception in violation of HRS § 708-830(2) is an example of a continuing offense); State v. Martin, 62 Hawai`i 364, 368-69, 616 P.2d 193, 196-97 (1980) (concluding that theft of welfare benefits based on false information was a continuous offense); see HRS § 708-801(6) (Supp. 2007) (stating that "[a]mounts involved in thefts committed pursuant to one scheme or course of conduct ... may be aggregated in determining the class or grade of the offense"). The State also treated Stenger's charged theft offense as a continuous offense in its prosecution of Stenger. Accordingly, no specific unanimity instruction was required.

III.
We vacate the August 24, 2005, Judgment of the circuit court and remand the case for a new trial.
NOTES
[1] At the time of the trial, Stenger had remarried and her legal name was Angela Sue Kaaihue.
[2] The Honorable Richard K. Perkins presided.
[3] HRS §§ 708-830(2) and 708-830.5(1)(a) (1993) provide as follows:

§ 708-830 Theft. A person commits theft if the person does any of the following:
. . . .
(2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the
§ 708-830.5 Theft in the first degree. (1) A person commits the offense of theft in the first degree if the person commits theft:
(a) Of property or services, the value of which exceeds $20, 000 [.]
[4] The mistake-of-fact defense is set forth in HRS § 702-218 (1993), which provides:

§ 702-218 Ignorance or mistake as a defense. In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:
(1) The ignorance or mistake negatives the state of mind required to establish an element of the offense; or
(2) The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.